(95 App. Div. 605.)

VAN WINKLE v. VAN WINKLE et al.

(Supreme Court, Appellate Division, First Department. June 24, 1904.)

1. DEEDS—RECITALS—ESTOPPEL.
    A recital in a deed that the grantors therein are each possessed of a certain interest estops the grantors and their privies in blood, law, and estate from asserting otherwise.

2. SAME—CONVEYANCE OF LAND ABUTTING ON HIGHWAY—OWNERSHIP OF HIGHWAY—CONVEYANCE—PRESUMPTION.
    Where one conveys land abutting on a highway, the fee of which is in him, the presumption is against a reservation of the fee, and such presumption is only overcome by express words which show an intent to exclude the highway from the subject-matter of the grant.

3. SAME—CONVEYANCE OF HIGHWAY—CONSTRUCTION OF DEED.
    The owner of a tract of land owned the fee of a public way, crossing the land, and his heirs gave deeds among themselves, which recited that the parties were proprietors as tenants in common of all the land, and the tracts abutting on the public way were described as "running to and thence along the way." Held, that the fee of the way was conveyed in the deeds of the parcels abutting on the way.
    O'Brien, J., dissenting.

Appeal from Trial Term, New York County.

Partition by Mary S. Van Winkle against Grace B. Ruggles and others. From the judgment, defendant Ruggles appeals. Affirmed. See 80 N. Y. Supp. 612.

The parcel is about 248 feet long and 37 feet wide. It is situate in a portion of what was formerly called "Cross Road to Harlem," and is designated "A" on the following map.

The respondents claim that they are the owners of said tract, having acquired the same by mesne conveyances from Hugh Williamson and the heirs at law of Charles Ward Apthorpe, deceased, while the appellants claim an undivided interest therein as heirs at law of said Apthorpe. Certain issues of fact raised by the pleadings were tried before a jury, where a verdict was rendered in favor of the plaintiff and the respondent Van Winkle. Subsequently the case came on for trial at Special Term, where a judgment was rendered sustaining the claim of the plaintiff and the respondent Van Winkle, and adjudging that the appellants do not own and have no interest in said tract. The appeal is from that judgment, and involves also a review of the trial had before the jury, and an order denying a motion for a new trial.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

James A. Deering, for appellants Ruggles and others.
Edward R. Volmer, for appellants Hamilton and others.
Edward Mitchell, for respondent Mary S. Van Winkle.
Henry F. Miller, for respondent Elizabeth M. Van Winkle.

McLAUGHLIN, J. In and prior to 1785, Charles Ward Apthorpe owned a tract of land of about 200 acres, through which, extending north and south, was a public thoroughfare called the "Bloomingdale Road," from which on the west to the Harlem Commons on the east extended a public way designated "Cross Road to Harlem," or "Apthorpe's Lane," or "Jauncey's Lane." The fee of this cross-road or lane was in Apthorpe, and the parcel of land the title to which is the subject-matter of this litigation is a portion of that roadbed. In 1785, Apthorpe mortgaged all of his land lying east of the Bloomingdale Road to the Marine Society of the City of New York for $2,500, which at the time of his death (May, 1797) remained unpaid. He died intestate, leaving him surviving nine children (among whom were two daughters, Ann and Charlotte, the latter having married John C. Vandenheuvel), and two grandchildren, the issue of a deceased daughter, who had married Hugh Williamson. Subsequent to the death of Apthorpe, the Marine Society commenced an action to foreclose its mortgage, to which the administrator of Apthorpe's estate, and Hugh Williamson, as guardian of the two grandchildren, were made parties. The action resulted in a sale of the land covered by the mortgage by the sheriff of the county of New York, at which Williamson became the purchaser, paying therefor $51,000. After deducting the amount due upon the mortgage, together with the costs and expenses of the sale, the balance was paid to the administrator, and by him distributed among those entitled thereto. In pursuance of the sale, the sheriff, on the 23d of April, 1799, delivered to Williamson a deed, absolute in form, of the entire tract sold.

It is contended by the appellants that the record title to the land in question became vested in Williamson under this deed, but they assert he purchased it as trustee or agent of the Apthorpe heirs, and, in subsequently dealing with it, acted in the same capacity. Upon this issue and another raised by the pleadings a jury trial was had, at the conclusion of which the court directed a verdict that Williamson, in making the purchase, did not act as the agent or trustee of the Apthorpe heirs, nor did he, in subsequently disposing of the land purchased, or any part of it, do so for their benefit. An exception was taken to the ruling, and this is one of the questions sought to be reviewed on the appeal. The conclusion at which we have arrived renders it unnecessary to determine whether the exception was well taken, because if it be assumed that it were, and that Williamson did in fact take title as the representative of or agent for the Apthorpe heirs, it does not aid the appellants, and therefore they could not have been injured by it.

This brings us to the consideration of the real question in the case, and that is whether the plaintiff and the respondent Van Winkle have, as the trial court held, acquired by mesne conveyances the title to the parcel in question. The fact is not disputed that in May, 1801, a map was made by Benjamin Taylor, similar to the one set out in the statement preceding this opinion, of the lands of which Charles Ward Apthorpe died seised, and that conveyances thereafter made of said land, either by Williamson or the Apthorpe heirs, were with reference thereto. Nor do we think it can be seriously disputed that the plaintiff and the respondent Van Winkle have acquired in the parcel in question whatever interest Charlotte Vandenheuvel had as the owner of lot 6, Ann Apthorpe as the owner of lot 8, and the Jaunceys as owners of the lot sold to them. Each of said lots is designated on the Taylor map referred to. If, therefore, Charlotte Vandenheuvel, Ann Apthorpe, and the Jaunceys acquired title to the parcel in question by virtue of the conveyance to them of their respective lots, the plaintiff and the respondent Van Winkle now have such title, because the subsequent conveyances were sufficient to place in them whatever title the original parties had.

The first conveyance in point of time is the one to the Jaunceys. It bears date the 1st of August, 1799. The grantors therein named are Hugh Williamson and all of the heirs of Charles W. Apthorpe, except one, whose interest had apparently been acquired by one of the others. The land conveyed is described as follows:

"Beginning at the corner of a field at the junction of Bloomingdale Road with a cross road that leads to Harlem; thence running along the Bloomingdale Road south· * * *; then east; * * * then north * * *; then east; * * *; then north * * *; then west to the beginning."

In this conveyance a covenant is inserted to the effect·that· each grantor is the owner of an undivided one tenth part, except one, who is the owner of two undivided tenth parts, having apparently acquired one tenth from one of the other Apthorpe heirs; and a further covenant—

"That they, the said parties of the first part, are respectively seized in the parts or proportions hereinabove particularly specified of a sure, absolute and indefeasible estate of inheritance in fee simple of, in and to the said tract."

This covenant unquestionably estopped all of the grantors, and all persons claiming under them, from thereafter claiming that their respective interests were not as·therein stated. The general rule is that a recital in a deed of a material fact is binding and conclusive upon the·parties, and those claiming under them as privies in blood, in estate, or in law. Demeyer v. Legg, 18 Barb. 14; Jackson v. Parkhurst, 9 Wend. 209; 24 Am. & Eng. Enc. of Law (2d Ed.) 60.

The other two conveyances, one to Charlotte Vandenheuvel and the other to Ann Apthorpe, bear date the 30th of November, 1802. In the former, the land conveyed is lot 6 on the Taylor map, and described as follows:

"Beginning at a stake by the fence on the Cross Road leading to Harlem, * * *; thence * * * north * * * to lot number five; thence along

the southern boundary of lot number five * * * to the eastern boundary of lot number four; thence by lot number four south * * * to the public road; then * * * east along the road * * * to the place of beginning."

The grantors were Williamson and all the Apthorpe heirs, except Charlotte, and one other who had apparently died without issue. In the latter the land conveyed is lot 8 on said map, and described as follows:

"Beginning at a stake by the fence on the public Cross Road, the corner of Mr. Jauncey's land; thence running south * * *; thence * *. * west; thence south * * * along Mr. Jauncey's land; then * * * east * * * to a stake * * * the corner of lot number seven; thence north * * * to the public road; then * * * west along the public road * * * to the place of beginning."

The grantors are the same as in the conveyance to Charlotte, with the exception of Ann, who took Charlotte's place.

It will be observed that in none of the descriptions is the starting point or boundary of the land conveyed "on the side" of the lane, and, therefore, even an inference that the grantors intended to exclude the fee therein is not justified. When land is described as running to and thence along a highway, the boundary of the land conveyed—the grantor owning the fee of the roadbed—is the center. This is the general rule. Matter of Ladue, 118 N. Y. 213, 23 N. E. 465; Matter of the Mayor, 20 App. Div. 404, 46 N. Y. Supp. 832, affirmed in 155 N. Y. 638, 49 N. E. 1100. There is a legal presumption against a grantor who owns the fee of a highway on which the land conveyed abuts intending to reserve such fee to himself (Holloway v. Southmayd, 139 N. Y. 400, 34 N. E. 1047, 1052), and such presumption is only overcome by express words which show an intent to exclude the highway from the subject-matter of the grant (Potter v. Boyce, 73 App. Div. 383, 77 N. Y. Supp. 24, affirmed in 176 N. Y. 551, 68 N. E. 1123). There are no words in any of the conveyances sufficient to overcome the presumption referred to. Not only this, but there are recitals in the conveyances to Charlotte and Ann which, as it seems to us, conclusively establish an intent on the part of the grantors in each of the deeds to convey to the center of the lane. The recitals are:

"Whereas the said parties * *. * are the proprietors as tenants in common of all the real estate whereof Charles Ward Apthorpe * * * died seized * * * And Whereas the said parties * * * as proprietors of the said real estate did, in virtue of a written agreement bearing date the ninth day of May in the year one thousand eight hundred and one, proceed to make partition of the said real estate amongst themselves, And Whereas, upon such partition, the lot of land hereinafter particularly described fell to the share of the party of the second part:—Now, Therefore, this Indenture Witnesseth, that in order to carry the said partition into effect, * * *."

This recital not only strengthens the presumption above alluded to, but, we think, establishes an intent to convey to the center of the lane. All of the land had been divided; the part included in the lane was not reserved; hence it must follow that it was intended to be included in the respective conveyances of lots abutting thereon. The conclusion thus reached renders it unnecessary to

take into consideration the deed from Williamson to Charlotte Vandenheuvel dated November 16, 1802.

Other errors are alleged, but after an examination they do not seem to be of sufficient importance to be here considered.

The judgment appealed from should be affirmed, with costs. All concur, except O'BRIEN, J., who dissents.

O'BRIEN, J. I dissent, and think that under the authorities the deeds in question cannot be said to convey to the center of the lane; that the descriptions of the deeds expressly limit the boundary to the side of the road; and that the surrounding circumstances show that in the partition the parties purposed to reserve to themselves the fee of the cross-road or lane.

The prevailing opinion concedes the rule of law that, where a deed states that the starting point or boundary of the land conveyed is "on the side" of a road, the inference that the grantors intended to exclude the fee thereof is justified. Thus in Kings County Fire Ins. Co. v. Stevens, 87 N. Y. 287, 41 Am. Rep. 361, it was said (page 292, 87 N. Y., 41 Am. Rep. 361):

"In the case before us the starting point of the description is on the southerly side of the Wallabout Bridge Road, and the exact point of beginning is fixed by the reference to the lands of Skillman. The other lines are described by courses and distances, and the third course gives the length of that line in feet to the road, which we think fairly imports that the measurement is to the side of the road; and the fourth course is along the road, etc., to the place of beginning. We think the roadbed was excluded by the terms of the description, within the cases of Jackson v. Hathaway, 15 Johns. 447 [8 Am. Dec. 263]; English v. Brennan, 60 N. Y. 609; White's Bank of Buffalo v. Nichols, 64 N. Y. 65. In Jackson v. Hathaway the description was, 'Beginning at a certain stake by the side of the road * * *.' In English v. Brennan the description was, 'Beginning at the southwesterly corner of Flushing and Clermont avenues * * *.' In White's Bank, etc., v. Nichols, * * * the grant * * * describes the granted premises as commencing at 'the intersection of the exterior lines of two streets * * *.' In the Nichols Case the court said: 'The point thus established is as controlling as any monument would have been, and must control the other parts of the description; all the lines of the granted premises must conform to the starting point thus designated.'"

When we examine the descriptions in the deeds under consideration, we find that each refers to a definite point which is by the side of the road. Thus in the conveyance to Charlotte Vandenheuvel, the words are:

"Beginning at a stake by the fence on the cross road leading to Harlem fifty links from the southeast corner of the fence, thence running north * * * parallel to the boundary fence to lot No. 5; thence * * * to the eastern boundary of lot No. 4; thence * * * south ten chains sixty links to the public road; then * * * along the road * * * to the place of beginning."

This description is almost identical with that stated in the Stevens Case, supra, for, although there the words used are, "beginning at a point on the southerly side of the Wallabout Bridge Road," and thus the side of the road is mentioned, here the point is "by the fence on the cross road," which fixes it none the less definitely on the side of the road. Here, as there, the third course is

a measured distance "to the public road," and the fourth "along the road * * * to the place of beginning." It follows that the deed did not in terms convey to the center of the lane, but that the north half of the roadway was, by the description of the deed, expressly excluded, and hence the fee thereto did not pass to Charlotte Vandenheuvel. The plaintiff, therefore, acquired no title to the northern half of the property here in dispute.

The descriptions in the two deeds conveying land on the south side of the road are equally explicit in excluding the roadbed. The land conveyed to Ann Apthorpe is described as "beginning at a stake by the fence on the public cross road, the corner of Mr. Jauncey's land, thence running south," and, finally, "to the public road, then * * * west along the public road * * * to the place of beginning." This deed not only shows the starting point of this land to have been on the side of the road, but it fixes "the corner of Mr. Jauncey's land" also at the stake by the side of the road, so that the following description in the Jauncey deed is made clear and certain:

"Beginning at the corner of a field at the junction of the Bloomingdale Road with a cross road * * * thence running along the Bloomingdale Road south * * * then east * * * then north * * * then east * * * then north eight chains ninety-two links, then * * * to the beginning."

Evidently the "eight chains ninety-two links" terminated at the "stake by the fence on the public cross road" mentioned in the Ann Apthorpe deed.

In Holloway v. Delano, 139 N. Y. 413, 34 N. E. 1052, this Jauncey deed was under consideration with respect to rights acquired in the Bloomingdale Road thereunder, and Judge Gray, writing the opinion, says:

"We are inclined to the view that the descriptive monuments or starting points for the boundary line cannot be fixed in the center of the Bloomingdale Road without straining too much the language used."

The case was decided, however, upon other grounds. The court was divided four to three, and one of those who concurred was of the opinion that title to the center of Bloomingdale Road passed under the deed. In that case, however, the Jauncey deed with respect to the Bloomingdale Road was not as clear in its meaning as it is with respect to the cross-road or lane, when examined in the light of the Ann Apthorpe deed. As said in Potter v. Boyce, 73 App. Div. 383, 77 N. Y. Supp. 24, affirmed in 176 N. Y. 551, 68 N. E. 1123:

"Whether or not the fee of an adjacent street passes by a conveyance of abutting property is a question of intention, and the courts are justified in looking at the situation of the property and the cotemporaneous acts of the parties, including the conveyances they have made of adjoining property, as well as the description contained in the conveyance in question, to determine the intention of the parties making the conveyance."

With respect to the general situation as showing intention, the map in the statement which precedes the prevailing opinion is suggestive in showing that the parties to the partition purposed to reserve to themselves the fee of the cross-road or lane. Although the

recitals in the conveyances state the intention to distribute all the estate, the location of the lots was such that there was an object in retaining the fee of the roadbed, and evidently the intention was to distribute all save that included therein. It will be seen from the map that, in addition to the lots of land herein directly involved which were conveyed in the partition to the Jaunceys, to Ann Apthorpe (No. 8), and to Charlotte Vandenheuvel (No. 6), there were other lots, numbered 2, 3, 4, and 5, conveyed respectively to Charles, James, Rebecca, and Eliza Apthorpe, and that lots 2, 3, and 4 abut on the cross-road or lane, whereas lot No. 5, belonging to Eliza Apthorpe, is north of lot No. 6, belonging to Charlotte Vandenheuvel. The map shows a road leading from Eliza Apthorpe's lot past the Vandenheuvel lot to the cross-road or lane, and this road or way, forming a means of access to the lane, was provided for in the deed to Charlotte Vandenheuvel. It was essential to Eliza Apthorpe that this right of way should be preserved, and to the other lot owners also it was important that the cross-road should remain always unobstructed.

In view, therefore, of the general situation and the location of the lots, the map in evidence, and the descriptions in each of the deeds, which refer to the side and not to the center of the road, I think that the fee of the lane did not pass under the conveyances, and hence that the plaintiff has no title to the property in dispute. From this conclusion, however, it does not follow that the defendants have title to the land. That question would turn upon whether the heirs of Williamson or the heirs of Apthorpe were the owners. This depends upon whether Williamson, when he gave the deeds, held title in his own name or as trustee. The trial court directed the jury to find that he was not the agent or trustee of the heirs of Apthorpe; but in view of all the evidence presented on the other side, there was, I think, in any event, a question of fact which the jury should decide.

For the reasons stated, I dissent, and am in favor of reversal of the judgment and a new trial.