355 F.2d 583
 BEACONWEAR CLOTHING COMPANY, a Partnership Composed of Lawrence R. Nasher, and Joseph S. Nasher, Copartners, to the Use and Benefit of the Amalgamated Bank of New York,
v.
The UNITED STATES.
The AMALGAMATED BANK OF NEW YORK, Third-Party Plaintiff,
v.
The UNITED STATES.
Joseph SPIOTTA, t/a Spiotta & Co., Third-Party Plaintiff
v.
The UNITED STATES.
 No. 226-59.
 United States Court of Claims.
 January 21, 1966.<CR>
 
 Page 585
 Edwin J. McDermott, Philadelphia, Pa., for plaintiffs.
 Mary J. Turner, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.
 Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.
 
 
 1
 COWEN, Chief Judge, delivered the opinion of the court:
 
 
 2
 This is a suit on a Government contract brought by Beaconwear Clothing Company, a nominal plaintiff which is no longer in business, to the use and benefit of The Amalgamated Bank of New York, which disavows any financial interest in the action. The Bank has filed a third-party petition by reason of the fact that it is the record assignee from Beaconwear, the contractor, of all proceeds on the contract in question. Joseph Spiotta, trading as Spiotta & Company, a subcontractor which performed all the work on the contract, has also filed a third-party petition, claiming recovery by virtue of its alleged status: (a) as beneficiary of Beaconwear's assignment to the Bank, and (b) as transferee on a second assignment of the proceeds from Beaconwear. Defendant has entered a counterclaim against Beaconwear arising out of an earlier and separate contract.
 
 
 3
 Beaconwear Clothing Company (hereinafter referred to as Beaconwear), a partnership composed of Lawrence R. Nasher and Joseph S. Nasher, was awarded contract no. DA30-352-TAP-2020 on May 29, 1953, for the manufacture of 64,000 cotton overcoats for the Army. 32,000 coats were to be delivered by October 31, 1953, and the remaining 32,000 by November 31 of the same year, with materials to be furnished by defendant. Beaconwear had arranged for performance of the contract by a subcontractor, General Coat, Inc. of Brooklyn, New York, but this firm never performed any work on the project, and production did not effectively begin until the end of the year. No deliveries having been made as of November 10, 1953, Beaconwear requested permission to subcontract the entire contract quantity to Joseph Spiotta, trading as Spiotta & Company (referred to throughout as Spiotta). A copy of the proposed subcontract agreement was forwarded to the contracting officer and approval was granted "within the terms and conditions of the contract," upon the understanding that Beaconwear would remain liable for any loss or damage to Government furnished property. On November 21, 1953, pursuant to the terms of the subcontract agreement with Spiotta, Beaconwear assigned all right and title to the proceeds of the contract to a financial institution of Spiotta's designation — The Amalgamated Bank of New York, third-party plaintiff herein (to be referred to as the Bank). This assignment from Beaconwear to the Bank conformed in all respects to the Assignment of Claims Act of 1940 (31 U.S.C. § 203 (1952)). Hence, at this stage Spiotta was the approved subcontractor under Beaconwear, charged with the manufacture and delivery of all the overcoats described in the contract, and the Bank was the authorized assignee of the proceeds of the contract. Although subsequent events and transactions have tended to complicate and confuse the factual pattern of the case, this essential relationship of Beaconwear as prime contractor, Spiotta as subcontractor, and the Bank as sole legal assignee, remained unaltered throughout the duration of the contract performance.
 
 
 4
 On January 18, 1954, Beaconwear attempted a second assignment of all rights and title to the moneys receivable under the contract to "Joseph Spiotta, Charles Silverman, or Joseph Freda." The document evidencing this transfer was phrased in the same language as, and made subject to, the prior assignment to the Bank. The three men (Silverman and Freda were employees of Spiotta at the time) were then given power of attorney to act for Beaconwear, to demand and receive all proceeds from the United States or the Bank, and to open a special account in the Bank in Beaconwear's name. The practical result of this arrangement was that when deliveries of overcoats were ultimately received by defendant from Spiotta, payments on the contract were made to the assignee Bank, where they were deposited in the special Beaconwear account and subsequently withdrawn by Spiotta.
 
 
 5
 Because performance of the contract had been delayed and no deliveries tendered as of February 16, 1954, the contracting officer terminated Beaconwear's right to manufacture and deliver 30,000 of the 64,000 overcoats called for. The remaining 34,000 units were eventually delivered by subcontractor Spiotta as of June 7, 1954, and accepted by defendant. Contract performance has thus been completed and the only matter outstanding concerns the question of compensation. Proper adjudication of this subject necessarily entails a determination: (1) as to what theory and facts form the basis of the cause of action; (2) as to what amount of recovery is allowable; and (3) as to which party, if any, is entitled to recover the said amount.
 
 
 6
 The claims asserted here by plaintiffs arise out of certain deductions which it is alleged were improperly made by defendant on the pertinent contract. These deductions fall into four general categories: (1) savings to the contractor on the substitution of an aluminum buckle for the originally specified phenolic one; (2) savings to the contractor for deviations in Operations 33C, 41C, 41L, and 10C of the contract; (3) loss of Government furnished property; and (4) the taking by defendant of unwarranted prompt payment discounts. Each of these subjects (to be referred to respectively as the Buckle, Deviations, Government Furnished Property, and Discount claims) will later be accorded separate and more specific treatment.
 
 
 7
 As to the matter of the amount of recovery, there has been substantial uncertainty and confusion. Plaintiffs have claimed various sums on essentially the same items at different stages of the litigation. In the petition, amended petitions, and motion for summary judgment, the sums of $2,617.65, $3,638.61, $5,784.06, $4,595.18, $2,040.46, and $2,306.20 appear in the respective prayers for relief. Plaintiffs' requested findings of fact claim entitlement in the amount of $2,028.04, and it was on the basis of this claim that findings of fact were made by our trial commissioner.
 
 
 8
 Assuming for the moment that the cause of action is meritorious, there next arises the question of which party is entitled to recovery on the contract. The court has before it as parties-plaintiff the contractor, the subcontractor, and the assignee. This, of course, is not a singular occurrence. What complicates matters, however, is the fact that Beaconwear, the contractor and normal plaintiff in such a case, is not suing in its own name, but for the benefit of the Bank. The Bank in turn has stated that it has no interest in the case. Spiotta is the real party in interest, having performed all the work on the contract and being the only party with a financial stake in the outcome of the action. It bases its primary claim to recovery here on either, or both, of the two assignments of the contract proceeds made by Beaconwear, alluded to above. Spiotta argues secondarily that it acquired the status of de facto prime contractor by reason of: (a) its having assumed responsibility for manufacture and delivery of all the overcoats called for, and (b) its having received from Beaconwear a general power of attorney to perform the entire contract and collect the proceeds thereon.
 
 
 9
 The trial commissioner to whom this case was referred has made findings of fact on each of the four claims which form the basis of plaintiffs' cause of action. On the Buckle and Deviations claims, he found that plaintiffs had already received full and reasonable compensation through a successful appeal to the Armed Services Board of Contract Appeals and that they have not established that they are entitled to any additional sum. We are in full accord with this determination and adopt it as part of our decision.
 
 
 10
 On the Government Furnished Property claim, defendant originally claimed that $3,173.75 in materials furnished by it under the terms of the contract had been unaccounted for, and it subsequently deducted from the final payment vouchers a total of $2,735.37 to cover the loss. An appeal was filed with the ASBCA in Beaconwear's name, and at the administrative hearing Spiotta took the position that it was merely the subcontractor and disclaimed any liability on the item. The Board found as a fact that Spiotta had indeed accounted for all property sent to it and was consequently not responsible for any of the shortages. The Board decided, however, that Beaconwear as prime contractor was indebted to defendant in the sum of $1,694.95 for the missing Government property. Plaintiffs presented no proof on this issue to attack the findings of the administrative body, and in their requested findings of fact seek only the sum of $1,040.42, representing the difference between the amount found by the Board to be owing to defendant ($1,694.95) and the amount actually withheld by defendant from the payment vouchers ($2,735.37). Defendant accepts the Board's finding and acknowledges that it improperly deducted $1,040.42 from Beaconwear's account on this item. As a result, the commissioner found this sum to be due the legal owner of the claim. Again, we adopt the commissioner's finding.
 
 
 11
 The Discount claim arises from the fact that defendant improperly took one percent prompt payment discounts on certain supplies which were not in fact paid for within the 20 days called for in the discount clause of the contract. Plaintiffs allege that $987.62 was thus improperly deducted, while defendant concedes liability in the amount of $680.64, subject to the affirmative defense (originally reserved, and then asserted in its answer to plaintiff's third amended petition) of failure to exhaust administrative remedies. The latter figure of liability in the amount of $680.64 is supported by the record, particularly the invoices and vouchers on the pertinent shipments, but plaintiffs are precluded from any recovery on this item by reason of their failure to seek administrative relief. United States v. Joseph A. Holpuch Co., 328 U.S. 234, 66 S.Ct. 1000, 90 L. Ed. 1192 (1946); Beacon Construction Co. of Mass. v. United States, 314 F.2d 501, 161 Ct.Cl. 1 (1963). Appeals were taken on the other three claims (Buckle, Deviations, and Government Furnished Property), but administrative remedies on the Discount claim, which arose contemporaneously with the others, were not pursued.[1] Summarizing plaintiffs' cause of action, then, no recovery is warranted on Claims 1, 2, and 4, while $1,040.42 is due the legal owner of the cause of action on Claim 3.
 
 
 12
 Who the legal owner of the claim is has been a matter of dispute throughout the litigation. Various representations as to ownership have been made by the parties, and a brief review of the proceedings to date in this court will serve to illustrate this point and hopefully to clarify the posture of the case. The petition filed May 25, 1959, and the first two amended petitions filed October 12, 1959, and February 17, 1960, were filed in the name of Beaconwear to the use and benefit of the Bank. Although the first amended petition mentioned the fact that Spiotta was the approved subcontractor, all three papers asserted without reservation that Beaconwear as prime contractor was the party responsible for performance and that all dealings with defendant's contracting officer were conducted in Beaconwear's name. Recovery was sought in each of the respective pleadings for the benefit of the Bank as assignee of record of all contract proceeds. The fact that Spiotta is and has been the real party in interest was not indicated by any of the preliminary pleadings.
 
 
 13
 On November 9, 1960, plaintiff moved for summary judgment again asking for recovery in the name of the Bank as assignee. Defendant cross-moved for summary judgment, partially on the ground that Beaconwear itself, and not the Bank, owned the claim. Both motions were denied in open court on January 8, 1962, and the case eventually scheduled for trial.
 
 
 14
 On January 30, 1962, plaintiff filed its third amended petition, in which it asserted for the first time the full extent of Spiotta's participation in the contract. The simple statement contained in the first amended petition, to the effect that Spiotta was the duly authorized subcontractor, was replaced by a more detailed description of the arrangements among the parties, including the terms of Beaconwear's subcontract with Spiotta and its subsequent assignment to the Bank. It was asserted at this time that the assignment from Beaconwear to the Bank was executed for the benefit of Spiotta and that it complied in all respects with the Assignment of Claims Act, which authorizes an assignment to one party (the Bank) as trustee for another party participating in the financing of the contract (Spiotta). It was noted that these two agreements anticipated that the Bank would, after deducting the interest on certain loans made to finance the contract, hold and pay over to Spiotta, as beneficiary of the described arrangements, all proceeds received from the Government. Shortly after submitting this third amended petition, plaintiff, on February 5, 1962, filed an amended answer to defendant's counterclaim in which it then demanded recovery for the Bank as trustee for Spiotta.
 
 
 15
 As the details of these arrangements were progressively disclosed by plaintiff's pleadings, defendant moved to bring in the Bank and Spiotta as third-party plaintiffs, for both appeared to be intricately involved in the matter. The motions were granted. On April 17, 1962, the Bank filed its petition and stated that Beaconwear had assigned all rights in the contract proceeds to it, and that all moneys collected from defendant after deducting interest on the notes had been paid to Beaconwear's special account (the signators of which are Spiotta and his two employees). The Bank asserted that it has been paid in full, that it has "no interest whatsoever" in the litigation, and that any proceeds received in the future will be turned over to this special account for Spiotta. Spiotta then filed its third-party petition, on October 31, 1962, claiming that by the express terms of its subcontract agreement with Beaconwear, and Beaconwear's subsequent assignment to the Bank, it is entitled to be recognized and treated by defendant as the beneficiary of the assignment. This type of trust arrangement is said not to violate the provisions of the Assignment of Claims Act on the grounds that Spiotta is allegedly a licensed bank under the laws of the State of New Jersey and has participated in the financing of the contract. Thus, as the case went to trial, plaintiffs' position was that the Bank is entitled to recover as trustee for Spiotta, while defendant maintained that only Beaconwear, the contractor, could prevail. At the trial the facts of Beaconwear's attempted second assignment of the contract proceeds to "Spiotta, Silverman, or Freda" were disclosed. This January 18, 1954, transfer to Spiotta succeeded that from Beaconwear to the Bank by approximately 2 months and was designed to effectuate and formalize an agreement by which Spiotta was to succeed to all of Beaconwear's residual rights in the contract proceeds so that these might be used as collateral by Spiotta for financing the contract through the Bank. Under the terms of this second assignment, Spiotta was expressly given power of attorney to collect all proceeds from either the United States or the Bank and to open the special account for this purpose in Beaconwear's name. The contracting officer had approved Spiotta as subcontractor and had received a copy of the subcontract agreement. Also, written notice of the original assignment to the Bank was filed as required by law. However, there is no evidence that defendant had any knowledge or notice of the purported second assignment.
 
 
 16
 Spiotta has acquired no rights against defendant as a result of either of the two assignments from Beaconwear. The Assignment of Claims Act of 1940 reads in part as follows:
 
 
 17
 All transfers and assignments made of any claim upon the United States, or of any part or share thereof, * * * and all powers of attorney, * * * shall be absolutely null and void, * * *
 
 
 18
 The provisions of the preceding paragraph shall not apply in any case in which the moneys due or to become due from the United States or from any agency or department thereof, under a contract providing for payments aggregating $1,000 or more, are assigned to a bank, trust company, or other financing institution, including any Federal lending agency: Provided,
 
 
 19
 * * * * * *
 
 
 20
 3. That unless otherwise expressly permitted by such contract any such assignment shall cover all amounts payable under such contract and not already paid, shall not be made to more than one party, and shall not be subject to further assignment, except that any such assignment may be made to one party as agent or trustee for two or more parties participating in such financing;
 
 
 21
 4. That in the event of any such assignment, the assignee thereof shall file written notice of the assignment together with a true copy of the instrument of assignment with (a) the contracting officer or the head of his department or agency; * * *
 
 
 22
 The second assignment of the contract proceeds from Beaconwear to Spiotta is of no effect as far as the United States is concerned, for it fails to fall within the exception to the sweeping language of the statute which authorizes assignments to "a bank, trust company, or other financing institution". Contrary to the allegations contained in Spiotta's third-party petition and plaintiff's third amended petition, the record clearly establishes that Spiotta was not a bank or authorized financial institution within the meaning of the statute at any time relevant to this contract. It cannot therefore claim immunity from the broad prohibition of the statute on this ground. Moreover, there is no merit to the contention that defendant waived any infirmity on Spiotta's part in this regard, for its contracting officer did not have notice of the second assignment.
 
 
 23
 The second assignment to Spiotta was a voluntary assignment which the Assignment of Claims Act of 1940 renders void as to defendant. One of the purposes of that Act was to save to the United States defenses which it has to claims by the assignor by way of setoff and counterclaim that might not be applicable to an assignee. United States v. Shannon, 342 U.S. 288, 72 S.Ct. 281, 96 L.Ed. 321 (1952). As will appear hereinafter, the United States has a valid counterclaim against Beaconwear in an amount which exceeds the sum due on contract No. TAP-2020. The Government's right to set off the amount of the counterclaim against the amount it owes on the contract is paramount to Spiotta's rights and, as we shall show, paramount to the rights of the Bank under the circumstances present here.
 
 
 24
 Spiotta's claim to recognition under provision 3 of the statute above as beneficiary of the first assignment from Beaconwear to the Bank, is also without merit. Although one of the major purposes of the various transactions entered into by the parties here was to protect Spiotta's interests by giving it a residual right to the contract proceeds, these private arrangements did not in fact create any rights on Spiotta's part against the United States. Spiotta alleges that the first assignment, to the Bank, was made "to one party as agent or trustee for two or more parties participating in such financing" and that the Bank thus became trustee for Spiotta within the express language of the Act. See Chelsea Factors, Inc. v. United States, 181 F. Supp. 685, 149 Ct.Cl. 202 (1960). There is no proof, however, that Spiotta "participated in the financing of the contract." The only manner in which it was involved in financing was to have borrowed money itself in Beaconwear's name to underwrite its own performance as subcontractor, using the second assignment and power of attorney contained therein as collateral for its own debt. This is scarcely the type of "participation" required by the statute. Spiotta cannot take comfort from the decision in Chelsea Factors, where the plaintiff was a detached financing institution which lent money to an independent contractor in order to finance that contractor's obligations with the Government. Plaintiff Spiotta in the case at hand did not act as such an independent financial institution, advancing money to a contractor in order to underwrite his performance of a contract. As noted above, Spiotta is not even an authorized financial institution: rather, it performed the contract itself and borrowed the money on its own behalf. Under such circumstances, it cannot be said that the arrangements among Beaconwear, the Bank, and Spiotta made the Bank a trustee for Spiotta of Beaconwear's assignment to the Bank within the terms of the third proviso of the Assignment of Claims Act of 1940. Moreover, Spiotta is barred from suing the Government in its own right as subcontractor, for it has had no privity with the United States. Severin v. United States, 99 Ct.Cl. 435, 442 (1943), cert. denied, 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944). Nor can Spiotta rely upon the decision in G. L. Christian & Associates v. United States, 312 F.2d 418, 160 Ct.Cl. 1 (1963), cert. denied, 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963), to establish that it had acquired the status of prime contractor. No contract was ever entered into directly between the Government and Spiotta for the furnishing of goods. Spiotta did assume responsibility, through its approved subcontract agreement with Beaconwear, for the supply of the entire contract quantity of overcoats, but defendant did not assent to Spiotta's becoming prime contractor in fact. In all aspects and throughout the performance of the contract in question, the Government insisted on recognizing only Beaconwear as prime contractor. All correspondence from defendant's contracting officer regarding the contract was addressed to Beaconwear, and all correspondence in turn from plaintiffs to defendant was signed in the name of Beaconwear. As far as defendant was concerned, Spiotta was at all times merely Beaconwear's subcontractor.
 
 
 25
 Nor is the Bank entitled to recover the amount due on contract No. TAP-2020. Although the Bank held a valid assignment, its only interest in the proceeds due on the contract was to secure the loans made to finance performance. By the Bank's own admission, the loans have been discharged; the Bank has been paid in full, and it no longer has any financial interest in the litigation. Generally, an assignment made as collateral security for a debt gives the assignee only a qualified interest in the assigned chose, commensurate with the debt or liabilities secured, even though the assignment appears to be absolute on its face. Peterman Lumber Co. v. Adams, 128 F.Supp. 6, 13 (W.D.Ark. 1955). Since the Bank's debt has been discharged in full, it no longer has a valid claim against the United States either for itself or as a trustee for Spiotta who, in any event, would have no greater rights than the Bank possesses under the first assignment. Berkeley v. United States, 276 F.2d 9, 149 Ct.Cl. 549 (1960); United States v. Munsey Trust Co., 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947).
 
 
 26
 Beaconwear thus remains the only party which has a legal claim to the amount due under the contract. It alone signed the contract; all the arrangements and adjustments were negotiated and executed solely in its name and all administrative appeals were prosecuted in its name. It was the prime contractor on contract No. TAP-2020 and has been held responsible by defendant for performance at all times. Without more, therefore, judgment would be rendered in favor of Beaconwear for the $1,040.42 due on its contract, but under the provisions of 28 U.S.C. § 2508, the defendant is entitled to offset the amount due on its counterclaim against the amount due Beaconwear and the amount of the counterclaim exceeds the amount due Beaconwear.
 
 DEFENDANT'S COUNTERCLAIM
 
 27
 Defendant's counterclaim arises out of a separate and distinct contract which Beaconwear performed for the Government. That contract, No. DA30-352-TAP-1811, called for the manufacture of 250,000 woolen field jackets for the Army and was awarded to Beaconwear on May 20, 1953. Spiotta was not involved in any manner in that undertaking.
 
 
 28
 As shown in our findings of fact, defendant's counterclaim is based on the fact that, at Beaconwear's request, it permitted the contractor to make ten deviations from the contract specifications. The changes resulted in substantial savings in the contractor's costs. The contracting officer issued written findings of fact in which he determined that the amount due the Government under the Changes clause, as a result of the savings, amounted to $39,225.77. The findings were mailed to Beaconwear September 12, 1957, but the evidence does not establish that Beaconwear, out of business at the time, received delivery of them. Although Beaconwear failed to file an appeal within the 30-day period required by the Disputes clause of the contract, we cannot in the absence of proof of delivery say that the contracting officer's findings are final, conclusive, and binding. However, plaintiffs offered and there were received in evidence without limitation the affidavits of the contracting officer and the affidavits of Allen Berkowitz and Albert M. Greene, upon whose computations the contracting officer based his findings. Although the affidavits are hearsay and might have been excluded upon a timely objection, no objection was made and thus the affidavits are to be considered as evidence in support of defendant's counterclaim and given their natural probative effect, particularly since plaintiffs offered them in evidence. Diaz v. United States, 223 U.S. 442, 450, 32 S.Ct. 250, 56 L.Ed. 500 (1912). The weight to be given such evidence is a question for the court, Byars v. United States, 238 F.2d 82 (6th Cir. 1956).
 
 
 29
 The books and records of Beaconwear are not in evidence and the amount of defendant's counterclaim was not determined on the basis of Beaconwear's actual cost experience in performing the contract. The affidavits referred to above show that the contracting officer based his determination with respect to the amount of direct labor savings upon an estimate made by Allen Berkowitz. Also, the contracting officer's finding as to the contractor's savings in overhead and profit was based upon an estimate made by Albert M. Greene that the saving in overhead amounted to 80 percent of the direct labor savings and that the saving in profit amounted to 6 percent of the direct labor and overhead saved. Mr. Berkowitz had had many years' experience in the garment industry in both private employment and in Government service and was frequently called upon to calculate savings that resulted from deviations in the specifications for the manufacture of military clothing. Mr. Greene is a college graduate who had been engaged in accounting work for many years and was frequently called upon by defendant to estimate savings realized by deviations in contract operations in the absence of actual cost experience. His estimates were in turn based upon median rates arrived at by the Renegotiation Board, the Army Audit Agency, and other agencies in transactions involving the garment industry at the time the contract was performed.
 
 
 30
 Although the affidavits constitute some evidence of the amount due on defendant's counterclaim, the affidavits must, as stated above, be weighed against the following countervailing evidence:
 
 
 31
 (a) With respect to Operation 41A, involving a deviation concerning 190,000 woolen jackets, defendant in its counterclaim asserts that Beaconwear realized a saving of $21,751.20. However, the evidence shows that by an agreement entered into between the contracting officer and Beaconwear on March 2, 1954, the actual reduction in the contract price as a result of that deviation was $5,225.
 
 
 32
 (b) With respect to the deviation in Operation 46J, defendant in its counterclaim maintains that Beaconwear realized a saving of $288.87, but by written agreement between the contracting officer and Beaconwear entered into about September 18, 1953, the actual reduction in the contract price on account of this deviation which involved 3,028 jackets was $60.56.
 
 
 33
 (c) The opinion of the ASBCA in Appeal No. 3979, which involved contract No. TAP-2020, states that defendant's accountant found that Spiotta's overhead in the performance of that contract amounted to a total of 30.47 percent of his direct labor costs. The same opinion states that after the contracting officer had calculated the direct labor saving on one deviation, he added 50 percent of the direct labor savings as overhead savings and a profit of 6 percent of the total thereof in accordance with Quartermaster policy.
 
 
 34
 Upon a consideration of all the evidence of record relating to the counterclaim, we have determined that the fair and reasonable amount of the savings realized by Beaconwear, as a result of the deviations permitted on contract No. TAP-1811, was $5,269.70. The remaining counterclaims pleaded by defendant have been abandoned.
 
 
 35
 In summary, then, Beaconwear is due the sum of $1,040.42 on contract No. TAP-2020, and defendant is entitled to $5,269.70 on its counterclaim against Beaconwear. After offsetting the counterclaim against the amount due Beaconwear, defendant is entitled to a net judgment on its counterclaim of $4,229.28. The Amalgamated Bank of New York and Joseph Spiotta, third-party plaintiffs, are entitled to recover nothing and their petitions are dismissed.
 
 
 
 Notes:
 
 
 [1]
 In the present action, the original petition and the first amended petition asserted only the first three claims. The Discount claim was asserted for the first time in the second amended petition