Nichols, Judge,
delivered the opinion of the court:
This suit was originally brought by Sampson and his partners, doing business as Southeastern Industrial Development District (SID), for $750,000 rehabilitation damages to premises owned by SID and leased to the United States from December 3, 1946 to December 31, 1966. There was a trial in October 1972 before Trial Judge Spector, in which plaintiffs prevailed, and subsequently by order of the court of June 28, 1974, recovered judgment for $292,574.26. A dispute remains between plaintiff SID and its former mortgagee, Equitable Life Assurance Society of the United States (Equitable). Equitable had intervened in 1971 and plaintiffs moved to dismiss the intervention. Action on this motion was deferred until after decision on the merits and we must now decide it. Both sides have now moved for summary judgment.
I
The starting place for stating the facts is the trial judge’s opinion. The claim was on the usual tenant’s covenant to restore the premises at the end of the tenancy to their condition at the beginning. The 1946 lease involved the general multistory Chimes office building in the downtown area of Syracuse, New York. In 1946 the Chimes building was one of the three leading office buildings in Syracuse, having been built about 1928. Government occupancy led to “extensive demolition and removal of corridors, walls and partitions which had theretofore defined the pre-existing, multi-tenant general office space.” “Other areas were altered into small *20 highly compartmented interviewing cubicles by means of 'half-partitions. Existing incandescent electric light fixtures were removed and replaced with about 900 large fluorescent fixtures suspended from the ceiling. They are not suitable for multi-tenant commercial offices, such as had pre-existed.”
In addition, the interior terrazzo floors, bronze elevator doors, marble and wood fixtures, all had been permanently and extensively damaged by the Government occupancy. Plaintiffs’ experts testified to total restoration damages of $585,148.52 (excepting reasonable wear and tear). The trial judge by way of a “jury” verdict reduced the award claim 80% for other causes of the damage and 20% for “betterment” to the building involved in the necessary replacement of old irreparable fixtures by new ones. Thus the trial judge made the uncontested award of $292,574.26 over which plaintiffs and their former mortgagee now do battle.
The trial judge’s finding 46 also stated: “It is concluded that the Chimes building was not rentable at all under the conditions prevailing at the expiration of the lease in 1966. Restored to rentable condition, there would have been a strong demand for multi-tenant space * *
There was no appeal from the trial judge’s findings and we affirmed without further comment by order on June 28, 1974, 204 Ct. Cl. 920.
II
The dispute between SID and Equitable is whether a 1954 mortgage made a valid assignment of these rehabilitation damages to Equitable. Clause 20 of the 1954 mortgage gives rise to Equitable’s claim.
20. The party of the second part for themselves, their heirs, legal representatives, successors and assigns, does hereby assign to said party of the first part, its heirs, legal representatives, successors and assigns any and all awards heretofore made and hereafter to be made to the present and all subsequent owners of the mortgaged premises, including any award and awards for change of grade of any street affecting said mortgaged premises, and said party of the first part, its heirs, legal representatives, successors and assigns is hereby authorized and empowered to collect and receive such award and awards and to give proper receipts and acquittances *21 therefor, and to apply the same toward the payment of the amount owing on said bond and mortgage, notwithstanding the fact that the amount owing on said bond and mortgage may not then be due and payable, and said party of the second part for themselves, their heirs, legal representatives, successors and assigns hereby covenants and agrees with said party of the first part, its heirs, legal representatives, successors and assigns upon request to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning said award and awards to the holder of said bond and mortgage, free, clear and discharged of any incumbrances of any kind or nature whatsoever.
SID and Equitable have engaged in previous litigation reported as United States v. Certain Space, 320 F. Supp. 491 (N.D.N.Y. 1969), affd, 435 F. 2d 872 (1970), cert. denied, 402 U.S. 908 (1972). This was a condemnation the United States instituted to acquire the use of part of the premises in the Chimes building it had previously leased, for a further period, eventually ending November 30,1967. The just compensation being uncontested as to amount, and part being on deposit in the registry of the court, the above reported decision allocates it among the claimants, holding that City Investing Company (CIC) should take it all. Equitable claimed only in case SID received any of it, in that case invoking the above mentioned Clause 20. Since SID took nothing, neither did Equitable. The parties here did not even mention that decision, still less offer the record therein or any of it as evidence. We think some of the findings in that case, and documents reproduced and published therein, are relevant here, and we refer to them hereinafter as appears. Perhaps we should reopen the record to receive this material but we think our references are proper under established doctrines of judicial notice and collateral estop-pel, especially since we are deciding under the summary judgment procedure.
Equitable was first mortgagee by a deed of trust dated April 1,1954, which consolidated and replaced earlier agreements. There was a second mortgage to Irving Trust Co. and in 1966 both were in default. In March 1967 CIC became assignee of Irving Trust Co. and commenced a foreclosure in the state court, but in October 1967, CIC accepted SID’s *22 deed in lieu of foreclosure. CIC and SID agreed between themselves that the award for condemnation of the leasehold would belong to CIC and the damages, if any, recoverable on the restoration claim to SID. The defendant United States was aware of this agreement and undertook not to set it up as a defense under the Anti-Assignment Act, 31 U.S.C. §203, which agreement has been honored. It is apparent that Equitable was aware of it also and that its acquiescence in the pocketing of the condemnation award by CIC, notwithstanding Clause 20, reflected other measures taken by CIC to assure Equitable that its security was not impaired.
The following facts are clear: A series of negotiations among SID, Equitable and CIC in 1967 resulted in a series of bargained agreements:
A. A September 14, 1967, letter from CIC to SID stated that the restoration and rehabilitation damages involved here “are reserved to you” (SID) and stated that they were not covered by the assignment of the rental condemnation damages to CIC.
B. SID provided CIC a deed to Chimes building which was recorded on October 17, 1967.
C. SID further assigned on October 2,1967, the rental condemnation damages award ($178,700) to CIC.
The tradeoffs as reflected in Certain Space and the parties’ motions and supporting documents were as follows:

Benefits to SID:

(1) $10,000 cash;
(2) sole retention of rights to rehabilitation damages (then mistakenly valued at about $7,000);
(3) sole retention of “loss of equity” damages claim (apparently worthless);
(4) it walked away from its losing investment in the Chimes building without personal liability;

Benefits to OIO (and Equitable) :

(1) title transfer without one-million-dollar state-foreclosure title-transfer tax;
(2) receipt of rental condemnation award damages ($178,700 cash);
(3) transfer of title to 2.2 million dollar building to second mortgagee — now new owner.
*23 These additional facts are also established:
(a) The July 30,1988, novation of the 1954 mortgage (in which Investors Funding Corp. replaced SID and new borrowing terms and amounts were fixed by agreement with Equitable) discharged SID from all remaining obligations if any to Equitable, other than the Clause 20 in issue.
(b) The original 1954 mortgage agreement limited SID’s liability to its interest in and value of the Chimes building.
(c) The disputed Clause 20 was construed as a “condemnation clause” by District Judge Port in denying SID any part of the condemnation award but “the rights or remedies of SID outside of the award, if any, remain undisturbed.”
The District Judge did not specifically find Equitable’s full involvement with CIC but we note that CIC was junior to Equitable (second mortgage is junior to first mortgage); that New York law requires and Equitable in fact was a party both to the foreclosure proceeding and to the condemnation proceeding; that in the condemnation proceedings Equitable patently waived its priority over CIC; and that in the transfer by deed from SID to CIC, Equitable also waived its rights to oppose the transfer under the mortgage by failure to object on time either in the foreclosure dismissal or condemnation proceeding decision.
Ill
Taken literally, Clause 20 would assign to Equitable any and all “awards” made to the mortgagor, whether or not they had anything to do with the mortgaged premises. Yet Equitable would not argue that Mr. Sampson was obliged to assign an award made to him by the Jaycees as “business man of the year.” One reads on and sees that the Clause purports to bind subsequent “owners of the mortgaged premises.” This indicates strongly that the “awards” are only those made to a person in his capacity as owner or, say, in respect to his ownership. If the title passes to another, subject to the mortgage, the former owner would remain obliged only with respect to awards to him, and the new one only with respect to awards to him, all to the extent and only to the extent *24 they were awards with respect to ownership; It is¿ therefore, a possible question whether an award that, absent agreement, would pass to a former owner is within the meaning of Clause 20. There is at least some ambiguity as to that. If the former owner and the new owner agree that the former owner, not the new one, shall receive any particular award, this shows an understanding by them that the award is not made with respect to ownership, but is a personal asset of the prior owner. Such an understanding would not bind the mortgagee if he was not aware of it, but if he was aware, and made no protest, this would tend to show that his under- • standing of the meaning of Clause 20 was the same as that of both the new and the old mortgagors. Here the mortgagee not only made no protest, but was a party to a tri-lateral series of transactions, of which the retention of the restoration claim by the SID group was an integral part. Thus we think the practical construction of all the parties supports the conclusion that Clause 20 was not meant to cover a claim by the former mortgagor against a former lessee for damages for breach of a convenant in the lease, even if it does cover some other things than condemnations. If the rehabilitation damages had been deemed part of the Clause 20 security, all parties would have agreed they should pass to the new mortgagor. While the waste committed by the Government impaired Equitable’s security to some extent, the deal contemplated making this good with funds obtained otherwise than from the Government. Counsel before us seemed all to agree that, antecedently considered, the claim against the Government looked like an extremely long shot.
TV
We can be helped a little more in the construction of Clause 20 by Judge Port’s calling it a condemnation clause, and as such, it served the function of protecting the mortgagee from loss of his security as the result of condemnation proceedings, and other proceedings of the same general character. It gave Equitable a claim to monies that stood in the place of the mortgaged premises. Consequently if the mortgagee, as here, has subsequently discharged the mortgagor, prior to any award and without reserving any rights in the award, the *25 mortgages can take no share in the award. We reached a similar conclusion in Beaconwear Clothing Co. v. United States, 174 Ct. Cl. 40, 52, 355 F. 2d 583, 590 (1966). In Beaoonwear the terms of the assignment were similarly broad and absolute in style, but the bank had already discharged the debt by payment — and consequently the assignment was held to be void as to any further obligations. We said at 52, 355 F. 2d 590:
* * * Generally, an assignment made as collateral security for a debt gives the assignee only a qualified interest in the assigned chose, commensurate with the debt or liabilities secured, even though the assignment appears to be absolute on its face. * * *
Here the facts are conclusive that the mortgagor SID’s liability was not personal but was restricted to the building itself — and that Equitable at the very least acquiesced in a series of agreements by which the second mortgagee took full possession and title to all of SID’s interest in the building — in effect discharging the only liability SID had ever had on the mortgage. The subsequent novation of the mortgage with the new owners confirms this- discharge analysis. Consequently, absent any right or title against SID under the mortgage (i.e., no debt), Equitable is without any rights against SID under Clause 20 which requires a debt as a condition precedent. Beaconwear, supra.
V
While it is not as clear as could be, the whole tenor of Judge Port’s opinion suggests to us that Equitable is seeking to litigate an issue on which it is estopped. The October 2, 1967, assignment of the right to the condemnation award, from SID to CIC, quoted by Judge Port in footnote 3 at 494, supra, conflicts with the obligation of SID and assumed by CIC under Clause 20. It is clear from the decision that Equitable waived this breach. But it also seems to be the more likely conclusion that Equitable waived its rights to the rehabilitation award at the same time. All the subsequent events bear out the conclusion that Equitable tacitly acquiesced in CIC’s agreements with SID in their entirety until March 12, 1971, when Equitable suddenly discovered *26 SID’s “worthless” claim was supported by a $750,000 estimate and Equitable’s new mortgagor Investors Funding Corp., was going bankrupt.
The conclusive support for this theory is contained in Equitable’s own deed of July SO, 1968. At the bottom of the very first page, Equitable recites that there are “no offsets, set-offs, defenses or counter-claims against said Mortgage notes and mortgages and the monies due thereunder”. These were the mortgages originally made by SID, but CIC was now the substituted mortgagor. If Equitable were truly due the monies from our judgment by virtue of Clause 20, they would also constitute “offsets” against the monies due from CIC under the mortgage. It is inconsistent for Equitable to seek full payment from Investors Funding under the mortgage novation of July 30, 1968, and to also seek the same money from SID — all the while denying the existence of offsets, set-offs, defenses, and counter-claims.
Even if we did not believe that the July 30,1968, mortgage novation clearly reflects the understanding of Equitable in light of the 1967 agreements (i.e., that Equitable waived any claim to SID’s rehabilitation damages award in the 1967 agreements), the New York law applies the doctrine of estoppel by deed to bar Equitable from challenging its own statement of the facts in its mortgage, Van Winkle v. Van Winkle, 95 App. Div. 605, 89 N.Y.S. 26 (1904) aff'd, 184 N.Y. 193, 77 N.E. 33 (1906).
Therefore Equitable’s claim falls because Clause 20 is inapplicable to the case, for failure to meet the condition precedent of a current mortgage debt of SID’s to apply the award to (under Clause 20), and for estoppel by deed by Equitable’s holding out that it had no such offset (as these damages) to amounts due Equitable under its mortgage with Investors Funding on the Chimes building.
The parties have debated quite a number of other issues, but our analysis of the legal effect of Clause 20, given above, makes it unnecessary for us to go into them, and we therefore refrain from doing so.
In view of the foregoing, after consideration of the motions of the parties and the briefs and arguments of counsel, the plaintiffs’ motion for summary judgment is granted and *27 the intervening petitioner’s motion for summary judgment is denied. The intervening petition is dismissed and the previous judgment for the plaintiffs is reaffirmed.*

See footnote, page 17.

See decision of the court sitting ere lane decided January 28, 1976, 208 Ct. Cl. 656, reversing the decision of May 14, 1975.