**COLONIAL NAVIGATION COMPANY and Keystone Shipping Company**

v.

**UNITED STATES.**

No. 319–58.

United States Court of Claims.
March 2, 1960.

---

·J. Franklin Fort, Washington, D. C., for plaintiffs. Kominers & Fort, Washington, D. C., on the brief.

Clare E. Walker, Washington, D. C., Asst. Atty. Gen. George Cochran Doub, for defendant. Earl L. Huntington, Washington, D. C., on the brief.

MADDEN, Judge.

This is a suit to recover $16,600 which, the plaintiffs say, was paid to the Government by mistake.

The plaintiff Colonial Navigation Company bought the tanker type ship, the Pueblo, from the United States Maritime Commission in December 1947 and received title to the ship on January 14, 1948. The sale was made pursuant to the Merchant Ship Sales Act of 1946, 60 Stat. 41, 50 U.S.C.A.Appendix, §§ 1735–1746. At the time of the sale it was customary for the Commission to require purchasers of such ships to make a deposit of $28,875 for each vessel to pay for the "slotting and strapping" of the vessel, which was regarded by the Commission as a "desirable feature" for which the purchaser should pay extra, in addition to the regular statutory sales price.

The plaintiff paid 25 percent of the regular sales price at the time of purchase, and gave a series of 15 promissory notes for the balance. Colonial did not make the customary slotting and strapping deposit at the time of its purchase of the vessel. By June 1951, the Commission had determined that $16,-600, rather than $28,875 was the right charge for slotting and strapping. Co-

lonial protested the payment of any amount for slotting and strapping, but in order to settle the controversy, Colonial and the Commission agreed that the last five promissory notes of Colonial should be increased by the aggregate amount of $16,600. In a "letter of understanding" Colonial said to the Commission:

"In requesting this adjustment of the mortgage notes to reflect the pricing of strapping as a desirable feature, Colonial Navigation Company expressly reserves its right to a refund or further adjustment of the cost for strapping as it may finally be determined by the United States Court of Claims in litigation now pending in that Court."

The Commission accepted this arrangement, and the mortgage notes were so increased by endorsement with a notation on the back of the notes of the Commission's agreement to cancel the increase if the pending suit went against it.

This court on November 3, 1953, decided that the strapping charge was invalid under the Ship Sales Act of 1946. Southeastern Oil Florida, Inc. v. United States, 119 F.Supp. 731, 127 Ct.Cl. 409, certiorari denied 348 U.S. 834, 75 S.Ct. 56, 99 L.Ed. 658.

On July 15, 1954, the plaintiff Keystone Shipping Company purchased the Pueblo from the stockholders of plaintiff Colonial, which was then in the process of dissolution. Colonial's stockholders, Keystone, and the Commission entered into a tripartite agreement whereby Keystone assumed liability on the notes and mortgage to the Commission, and Colonial's stockholders were released from all liability on them. The parties to this agreement took no notice of the fact that under the Commission's agreement with Colonial, $16,600 of the amount of the notes would be cancelled unless this court's decision in Southeastern should be reversed by the Supreme Court of the United States, in which Court the Government's petition for a writ of certiorari was then pending. The consequence of this oversight was that Keystone paid the stockholders of Colonial $16,600 less for their equity in the Pueblo than it would have paid them if the mortgage notes to the Commission, which Keystone assumed, had been reduced by that amount. Keystone paid the Commission the notes then remaining outstanding, including the last five notes, to which the $16,600 had been added. The $16,600 which Keystone should have paid to Colonial's stockholders was, therefore, paid to the Commission. The mistake was not discovered until, in 1957, the Commission returned the cancelled notes to Keystone, and Keystone observed the endorsements on them.

At the time of the sale by Colonial to Keystone, the Commission released Colonial's stockholders from any further liability on Colonial's notes and mortgage to the Commission, and Colonial's stockholders released the Commission "from any, all and every obligation and liability which may have been incurred by the mortgagee (the Commission) as a result of the sale of said vessel to the mortgagor (Colonial)." The Government says that the terms of this release were broad and inclusive enough to release the Commission's promise to cancel the $16,600 endorsed on the notes, and that the Commission's release of Colonial and its stockholders from their liability on the notes was a sufficient consideration for such a counter-release to the Commission. Both of these statements are unquestionably true.

This case is before us on motions for summary judgment. The plaintiffs' petition alleges that the fact that the Commission had promised to cancel the $16,600 was overlooked by all parties to the tripartite agreement, or that if any of the three parties was aware of it, that party was the Commission, which was also aware that the other parties were overlooking it. The defendant asserts that Colonial was not unaware of the promise to cancel. To support this assertion, the defendant points to the fact that Colonial was of course aware of the

endorsement of the promise on the notes two years and three months before the signing of the release. We cannot infer, from the fact that Colonial then knew of the promise, that it was aware of it two years and three months later. The defendant alleges no facts which would support a determination that Colonial was aware of the promise at the time of the release, and we cannot find that it was. Even on the facts as alleged and presented by the defendant, we can find no indication of an intent to release the Commission from the obligation in question. The broad release by Colonial's stockholders to the Commission would not have included this item. It was a definite, fixed obligation for $16,600 which no one would intend to give away or bargain away without any mention or discussion. The release, fairly interpreted, did not nullify the Commission's obligation.

Keystone has been made a party plaintiff in this suit. It has disclaimed any interest in the recovery, and obviously has no such interest. It has paid only what it agreed to pay for the ship. It paid $16,600 of that price to the wrong person, but it is not being asked to pay it again.

A motion was made to join one Joseph B. Dunbaugh as a party plaintiff, in an effort, out of abundant caution, to avoid any contention that the real party in interest in the claim is not before the court. We denied the motion on February 3, 1960. By some arrangement between Mr. Dunbaugh and the other stockholders, the instant claim was assigned to him, and he assumed the payment of any remaining liability of Colonial to creditors. The Government says that the purported assignment to Dunbaugh is null and void by virtue of the Assignment of Claims Act, 31 U.S.C.A. § 203.

■■ We assume, without deciding the question, that what the Government says about the assignment to Dunbaugh is true. But an attempted assignment of a claim against the United States does not forfeit the claim. It leaves the claim where it was before the purported assignment. The plaintiff's petition alleges that it is a corporation in process of dissolution. Assets coming in to it during that process will be disposed of as the stockholders agree and as the law permits. As to this asset, Colonial is the party in interest, and the only party whose rights the Government is obliged to regard.

The Maritime Commission agreed with the plaintiff Colonial that, under specified conditions, which conditions occurred, it would not collect $16,600 of the amounts promised in Colonial's notes. It did collect the $16,600 under circumstances in which the $16,600 was, in effect, paid by Colonial.

■ The defendant claims that the statute of limitations bars this action, because the amounts in question were added to the promissory notes on April 18, 1952, and suit was not brought until July 10, 1958. The major part of the payments sought here to be recovered were not actually made until April 4, 1957. A smaller portion had been paid on July 16, 1954, but the right to recover it did not, according to the agreement endorsed on the notes, arise until the Supreme Court's denial of certiorari in the Southeastern case in October of 1954. In any event, this suit was brought within six years of the earliest payment.

The defendant's motion for a summary judgment is denied as to the plaintiff Colonial Navigation Company and is granted as to the plaintiff Keystone Shipping Company. The plaintiffs' similar motion is granted as to the plaintiff Colonial Navigation Company and is denied as to the plaintiff Keystone Shipping Company. The petition as to Keystone Shipping Company will be dismissed. Judgment will be entered for the plaintiff Colonial Navigation Company in the sum of $16,600.

It is so ordered.

JONES, Chief Judge, and LARAMORE and WHITAKER, Judges, concur.