# United States Court of Appeals for the Federal Circuit

---

**NORTHROP GRUMMAN COMPUTING SYSTEMS, INC.,**

*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**

*Defendant-Appellee.*

---

2011-5124

---

Appeal from the United States Court of Federal Claims in no. 07-CV-613, Judge Francis M. Allegra.

- - - - - - - - - - - - - - - - - - - - - -

**NORTHROP GRUMMAN COMPUTING SYSTEMS, INC.,**

*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**

*Defendant-Appellee.*

---

2012-5044

---

Appeal from the United States Court of Federal Claims in no. 11-CV-608, Judge Francis M. Allegra.

————————————

Decided: February 19, 2013

————————————

DAVID C. AISENBERG, Looney Cohen & Aisenberg, LLP, of Boston, Massachusetts, argued for plaintiff-appellant in both appeals.

AMANDA L. TANTUM, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee in both appeals. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, KIRK T. MANHARDT, Assistant Director, and ARMANDO A. RODRIGUEZ-FEO, Trial Attorney.

————————————

Before RADER, *Chief Judge*, PROST and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge*.

Northrop Grumman Computing Systems, Inc. ("Northrop") appeals two decisions of the Court of Federal Claims ("*Northrop I*" and "*Northrop II*"). Both appeals arise from a single contract between Northrop and U.S. Immigrations and Customs Enforcement ("ICE") for the delivery of computer-network monitoring software. Because we find that the first claim letter Northrop filed with the contracting officer was a valid claim under the Contract Disputes Act ("CDA"), we reverse the Court of Federal Claims' decision in *Northrop I* and remand the case for further proceedings. We dismiss as moot Northrop's appeal in *Northrop II*.

## I. BACKGROUND

In July 2001, ICE awarded Northrop[1] Contract No. NAS5-01143, which was a commercial items contract. Under this Contract, ICE awarded Delivery Order No. COW-4-D-1025 according to which Northrop would lease to ICE, and provide support for, network monitoring software produced by Oakley Networks ("Oakley"). The Delivery Order provided that Northrop would furnish the software and services via a lease for one twelve month base year and three twelve month option years. The base-year price was $900,000, and each option year was priced at $899,186. If the Government exercised all three option years, the Delivery Order would have a total value of $3,597,558. In the month that followed the Delivery Order award, ICE executed three modifications at Northrop's request. These modifications added clauses regarding Northrop's first-priority status, the Government's best efforts to secure funding, and a prohibition on the Government substituting comparable software for the Oakley software in the Northrop contract.

In order to obtain Oakley's software, Northrop was required to pay Oakley an up-front fee of $2,899,710. Four days after the Delivery Order award, ICE provided Northrop with an "essential use statement" that described the intended use of the Oakley software and was designed to facilitate third-party funding for the Oakley software. Thereafter, Northrop entered a private finance agreement with ESCgov, Inc. for the Oakley software. Under the terms of the financing agreement, ESCgov would pay Northrop $3,296,093 in exchange for Northrop's assign-

---

[1] Northrop Grumman Computing Systems, Inc. ("Northrop") is a division of Northrop Grumman Corporation's Information Technology segment. At the time of the award, this division was named Logicon FDC. The contract was modified in October 2004 to reflect the name change.

ment to ESCgov of all payments received under the Delivery Order.  ESCgov subsequently assigned its rights under the Northrop-ESCgov agreement to Citizens Leasing Corp.  Neither Northrop, ESCgov, nor Citizens Leasing Corp. notified the Government of the assignments.

On September 30, 2005, ICE sent Northrop formal notification of its decision not to exercise the lease's first option year, which was to run from September 30, 2005 until September 29, 2006.  Northrop responded on February 22, 2006 with a request for information regarding the Government's decision.  On April 14, 2006, Northrop received a response from the contracting officer ("CO"), who emphasized that there was no "termination," but that the Government simply was not in a position to fund the options due to lack of appropriations.

### A. NORTHROP'S FIRST CLAIM (*NORTHROP I*)

On September 21, 2006, Northrop sent to the CO a letter with the subject line "Contract Disputes Act Claim for not Exercising Option Year #1 under COW-4-D-1025 – Oakley Leasing Agreement."  Northrop notified the CO that the letter was submitted "[i]n accordance with the Contract Disputes Act of 1978, 41 U.S.C. 601 et seq., and the Disputes clause of the Contract."[2]  Northrop asserted that the Government had breached the contract modifications made after the Delivery Order's award, and stated that the company was seeking $2,697,558.00 in damages. The letter did not mention the two private financing assignments.  The letter concluded with a certification

---

[2]    Congress revised and recodified title 41 of the United States Code in order to "remove ambiguities, contradictions, and other imperfections...." Pub. L. No. 111–350, 124 Stat. 3677 (2011).  All further citations in this opinion are to the current version of the CDA, which is now codified at 41 U.S.C. §§ 7101–7109 (Supp. IV 2006).

and a request for a final decision. On December 29, 2006, the CO issued a final decision denying Northrop's claim.

On August 20, 2007, Northrop filed a complaint before the Court of Federal Claims appealing the CO's decision. The Court of Federal Claims scheduled trial for June 13, 2011. Before trial, the Government learned of Northrop's private financing assignments and filed a motion to dismiss for lack of subject-matter jurisdiction on grounds that Northrop's letter was not a valid CDA claim. Specifically, the Government argued that Northrop's letter was not a valid claim because it failed to provide adequate notice of the nature of the claim, and because it did not reveal that Northrop's claim was for third-party losses of private funders. On June 15, 2011, the Court of Federal Claims issued its opinion in *Northrop I* granting the Government's motion to dismiss for lack of subject-matter jurisdiction. *Northrop Grumman Computing Sys., Inc. v. United States*, 99 Fed. Cl. 651, 660-61 (Fed. Cl. 2011).

The Court of Federal Claims determined that it did not have jurisdiction because Northrop's September 21, 2006 claim letter to the CO did not constitute a valid CDA claim. The court reasoned that Northrop had not supplied the CO with "adequate notice" of the claim because it failed to "alert the contracting officer to the potential application of the Anti-Assignment Act and *Severin* doctrine [and] also to put him on notice as to the possible relevancy of a host of other issues that have been associated with sponsored or 'pass-through' claims." *Id.* at 659. The court stated, "Based on that failure, the court must conclude that Northrop's 'claim' did not meet the requirements of the CDA, thereby depriving this court of jurisdiction over this lawsuit." *Id.* at 660.

Northrop appealed the Court of Federal Claims' dismissal in *Northrop I* to our court.

## B. NORTHROP'S SECOND CLAIM (*NORTHROP II*)

On July 20, 2011, while *Northrop I* was pending before the Court of Federal Claims, Northrop filed a second claim letter with the CO. Like the *Northrop I* letter, this letter also contained the subject line "Contract Disputes Act Claim for not Exercising Option Year #1 under COW-4-D-1025 – Oakley Leasing Agreement." The second claim letter contained much of the same content as the *Northrop I* claim letter, but also explained that "Northrop Grumman Computing financed this lease through various payments made by ESCGov [sic] and Citizens Leasing Corporation" and provided documents on the financing arrangements. Before the CO responded to Northrop's second claim letter, Northrop filed its notice of appeal to our court in *Northrop I*.

The CO determined that Northrop's second claim was the same claim pending before this court in *Northrop I*, and that as a result, he lacked authority to resolve Northrop's second claim:

> Northrop's July 2011 claim arises from the same operative facts and is substantially the same claim as the claim it previously submitted to ICE dated September 21, 2006. . . . It is the Government's position that because the July 2011 Contract Disputes Act Claim for not exercising option year #1 under COW-4-D-1025 is substantively the same claim as the one currently pending before the Federal Circuit on appeal under 28 U.S.C. § 516, only the Department of Justice possesses the authority to act.

The CO consequently declined to issue a final decision on Northrop's second claim.

Northrop appealed the CO's refusal to issue a decision on its second claim to the Court of Federal Claims. The Court of Federal Claims held that it lacked jurisdiction

over Northrop's second complaint (*Northrop II*). *Northrop Grumman Computing Sys., Inc. v. United States*, 101 Fed. Cl. 362, 365 (Fed. Cl. 2011). In its decision, the court noted, "[Northrop's second] complaint asserts the same claim as [the *Northrop I*] complaint that was dismissed by this court for lack of jurisdiction on June 23, 2011." The court found that Northrop's pending appeal in *Northrop I* divested the CO of his authority to issue a final decision on Northrop's second claim. Without a valid final decision from the CO, the court concluded that it lacked jurisdiction over Northrop's second complaint.

Northrop appealed the Court of Federal Claims' dismissal in *Northrop II* to our court and we consolidated *Northrop I* and *II*. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II. STANDARD OF REVIEW

We review a grant or denial of a motion to dismiss for lack of subject-matter jurisdiction de novo. *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1361 (Fed. Cir. 2009). As both *Northrop I* and *Northrop II* were dismissed for lack of subject-matter jurisdiction, we review both dismissals de novo.

## III. *NORTHROP I*

In *Northrop I*, the Court of Federal Claims concluded that Northrop's "claim" did not meet the requirements of a valid claim under the CDA. Specifically, the court explained that Northrop's failure to disclose information about its third-party financing arrangements deprived the CO of adequate notice of the basis of the claim because the claim failed to alert the contracting officer to the potential application of the Anti-Assignment Act, the *Severin* doctrine, and other issues associated with sponsored or "pass-through" claims. The court thus concluded that Northrop had not submitted a valid CDA claim to the

CO, and accordingly, the court lacked subject-matter jurisdiction over the *Northrop I* complaint.

On appeal, Northrop argues that its first claim letter fully complied with the requirements of the CDA because, among other grounds, the CDA did not require Northrop to disclose its third-party financing arrangements. Accordingly, Northrop asks us to reverse the Court of Federal Claims' dismissal and remand for adjudication of its CDA claim.

A prerequisite for jurisdiction of the Court of Federal Claims over a CDA claim is a *final decision* by a contracting officer on a *valid claim*. *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010). If a purported claim is found to be insufficient for any reason, the insufficiency is fatal to jurisdiction under the CDA. *Sharman Co. v. United States*, 2 F.3d 1564, 1568 (Fed. Cir. 1993) ("Under the CDA, a final decision by the contracting officer on a claim . . . is a 'jurisdictional prerequisite' to further legal action thereon."), *overruled on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995). Thus, if Northrop's claim is an insufficient CDA claim, the Court of Federal Claims lacks subject-matter jurisdiction to review both the claim itself and the CO's decision.

The CDA establishes some prerequisites for a valid claim. For example, the CDA requires that a claim by a contractor be submitted to the contracting officer for decision, that the claim be in writing, and that the contractor certify claims over $100,000.[3] *See* 41 U.S.C. §

---

[3] For claims of more than $100,000, the CDA requires the contractor to certify that (1) the claim is made in good faith, (2) the supporting data are accurate and complete to the best of the contractor's knowledge and belief, (3) the amount requested accurately reflects the contract adjustment for which the contractor believes the

7103(a)–(b). In addition to the statutory requirements of the CDA, we assess whether a claim is valid based on the Federal Acquisition Regulation(s), the language of the contract in dispute, and the facts of the case. *Reflectone,* 60 F.3d at 1575; *see also Garrett v. General Elec. Co.*, 987 F.2d 747, 749 (Fed. Cir. 1993).

The Federal Acquisition Regulation ("FAR") defines "claim" as follows:

> (c) Claim, as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. However, a written demand or written assertion by the Contractor seeking the payment of money exceeding $100,000 is not a claim under the Act until certified. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act. The submission may be converted to a claim under the Act, by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

FAR 52.233–1. In *Reflectone*, we held that the FAR sets forth only three requirements of a non-routine "claim" for money: that it be (1) a written demand, (2) seeking, as a matter of right, (3) the payment of money in a sum certain. 60 F.3d at 1575–76.

While a valid claim under the CDA must contain "a clear and unequivocal statement that gives the contract-

---

Federal Government is liable, and (4) the certifier is authorized to certify the claim on behalf of the contractor. 41 U.S.C. § 7103(b)(1)(A)–(D).

ing officer adequate notice of the basis and amount of the claim," the claim need not take any particular form or use any particular wording. *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987). "All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Id.*

Northrop submitted a written claim letter to the CO in *Northrop I*. The letter contained clear allegations of the Government's breach of specific contractual provisions, and it demanded a specific amount in damages. The letter was accompanied by the required certification statement, and it stated a clear request for a final decision along with the relief sought. As required by the CDA and the FAR, Northrop's claim letter was "a clear and unequivocal statement" that gave the CO adequate notice of the basis for the alleged breach and specified an amount of the claim. *See Maropakis*, 609 F.3d at 1327 (quoting *Contract Cleaning*, 811 F.2d at 592). Northrop's claim letter thus satisfied all the requirements listed for a CDA "claim" according to the plain language of the FAR.

The Court of Federal Claims noted concern that Northrop's failure to disclose the details of its financing arrangements did not give the contracting officer adequate notice of the potential applicability of the Anti-Assignment Act, the *Severin* doctrine, or "a host of other issues that have been associated with sponsored or 'pass-through' claims." *See generally* Anti-Assignment Act, 31 U.S.C § 3727, 41 U.S.C. § 15; *Severin v. United States*, 99 Ct. Cl. 435, 442–43 (1943) (holding that a prime contractor cannot recover on behalf of subcontractor to whom prime contractor is not independently liable).

The Court of Federal Claims correctly found that Northrop's failure to notify the Government of its assignment rendered the assignment "null and void as against

the United States" by operation of the Anti-Assignment Act. The court explained, "That does not mean, however, that Northrop forfeited its breach of contract claim against the United States." Indeed, the court concluded that Northrop was the proper party to bring the claim. We agree. *See Beaconwear Clothing Co. v. United States*, 355 F.2d 583, 591 (Ct. Cl. 1966) (holding, where Beaconwear's assignment of contractual right to receive payments was void as against the Government, that "Beaconwear thus remains the only party which has a legal claim to the amount due under the contract"); *Colonial Navigation Co. v. United States*, 181 F. Supp. 237, 240 (Ct. Cl. 1960) ("But an attempted assignment of a claim against the United States does not forfeit the claim. It leaves the claim where it was before the purported assignment."). As such, Northrop is not asserting a pass-through claim, and the *Severin* doctrine does not apply in this case. *Beaconwear*, 355 F.2d at 591; *Colonial Nav.*, 181 F. Supp. at 240.

Because Northrop was the proper party to bring the claim, we disagree that by omitting financing information Northrop failed to give the contracting officer adequate notice for the basis of its claim. We therefore hold that the claim letter Northrop submitted in *Northrop I* was a valid claim under the CDA, and the Court of Federal Claims had subject-matter jurisdiction over the CO's decision on that claim.

## IV. CONCLUSION

Because we find that the Court of Federal Claims had jurisdiction over Northrop's claim in *Northrop I*, the *Northrop II* appeal is moot.

The decision of the Court of Federal Claims in *Northrop I* (Appeal No. 2011-5124) is **REVERSED AND REMANDED** for adjudication on the merits. Northrop's appeal in *Northrop II* (Appeal No. 2012-5044) is **DISMISSED** as moot.

COSTS

Each party shall bear its own costs.