# United States Court of Appeals for the Federal Circuit

---

**NORTHROP GRUMMAN COMPUTING SYSTEMS, INC.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2015-5074

---

Appeal from the United States Court of Federal Claims in No. 1:07-cv-00613-FMA, Senior Judge Francis M. Allegra.

---

Decided: May 24, 2016

---

DAVID C. AISENBERG, Looney Cohen Reagan & Aisenberg LLP, Boston, MA, argued for plaintiff-appellant.

MARTIN M. TOMLINSON, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., MARTIN F. HOCKEY, JR.

---

Before PROST, *Chief Judge*, REYNA and WALLACH, *Circuit Judges.*

REYNA, *Circuit Judge.*

Northrop Grumman Computing Systems, Inc., ("Northrop") appeals from summary judgment by the United States Court of Federal Claims. *Northrop Grumman Computing Sys., Inc. v. United States*, 120 Fed. Cl. 460, 466 (2015) ("*Northrop Cl.*"). The Court of Federal Claims determined that Northrop failed to show any harm resulting from its claim that the Government had breached the contract. We *affirm* the judgment of the Court of Federal Claims.

## BACKGROUND

This is Northrop's second appeal to this court in this case. The background of the prior actions has been thoroughly recounted by the Court of Federal Claims, *Northrop Cl.,* 120 Fed. Cl. at 461–64, and by this court, *Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1109–11 (Fed. Cir. 2013) ("*Northrop Cir.*"). The facts relevant to the limited issue on this appeal are as follows.

### Factual History

In July 2001, U.S. Immigration and Customs Enforcement ("ICE") awarded Northrop a Delivery Order to supply and support network monitoring software produced by Oakley Networks ("Oakley"). The Delivery Order provided that Northrop would furnish the software and services via a lease for one base year and three option years. The agreed base-year price was $900,000, and the agreed price for each option year was $899,186. The Delivery Order represented a total value of $3,597,558, if the Government exercised all three option years. Approximately one month after the award, Northrop and ICE executed a modification of the Delivery Order requiring

the Government to use its best efforts to secure funding for the option years.

Without notice to the Government, Northrop entered into a private agreement with ESCgov, Inc. ("ESCgov"), an IT services company. Under the terms of the agreement, Northrop assigned all payments due under the Delivery Order to ESCgov. In exchange, ESCgov agreed to pay to Oakley and Northrop a total amount of $3,296,093. ESCgov paid $2,899,710 directly to Oakley for the software and paid the remainder to Northrop, $191,571 of which covered Northrop's anticipated profit under the Delivery Order. *Northrop Cl.*, 120 Fed. Cl. at 463. The agreement also absolved Northrop from any liability to ESCgov for "failure of the Government to exercise a renewal option" so long as Northrop "use[d] its best efforts to obtain the maximum recovery from the Government." *Id.* at 462.

ESCgov subsequently assigned its rights under the Northrop–ESCgov agreement to Citizens Leasing Corp. ("Citizens"), a financial institution. None of the parties to the assignments notified the Government of the assignments as required by the Anti-Assignment Act, 31 U.S.C. § 3727(a)(2), (c)(3).[1]

---

[1] The Anti-Assignment Act, 31 U.S.C. § 3727, serves, in part, "to prevent possible multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable the Government to deal only with the original claimant." *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 371 (1949) (citing *Spofford v. Kirk*, 97 U.S. 484, 490 (1878)). It requires, among other things, that "the assignee files a written notice of the assignment and a copy of the assignment with the contracting official or the head of the agency, the surety on a

The Government paid Northrop the $900,000 fee for the base year, which it passed on to ESCgov. The Government, however, did not use the software in any of its investigations. On September 30, 2005, ICE sent Northrop formal notification of its decision not to exercise the lease's first option year because it did not secure funding. Subsequently, the Government did not exercise any of the option years.

Procedural History

On September 21, 2006, Northrop filed a claim with the contracting officer ("CO") challenging the Government's decision not to exercise the first option year on grounds that the Government breached the contract by failing to use its best effort to secure funding. The CO declined the claim.

On August 20, 2007, Northrop filed with the Court of Federal Claims a complaint appealing the CO's adverse decision. During the proceedings, Northrop disclosed for the first time the ESCgov and Citizens agreements. *Northrop Cl.*, 120 Fed. Cl. at 464. The disclosure led the Court of Federal Claims to conclude that Northrop was seeking damages based on a "pass-through" theory. *Northrop Cir.*, 709 F.3d at 1110. The Court of Federal Claims dismissed the lawsuit on grounds that it lacked jurisdiction because Northrop failed to provide the CO with "adequate notice" of its claim by failing to disclose the agreements. *Id.*

On August 23, 2011, Northrop appealed from the judgment of the Court of Federal Claims. Northrop argued that its claim was not a pass-through claim brought on behalf of the third parties, but rather a breach of contract claim brought on its own behalf. *Id.* at 1113.

---

bond on the contract, and any disbursing official for the contract." 31 U.S.C. § 3727(c)(3).

We reversed the Court of Federal Claims' judgment that it lacked jurisdiction, holding that Northrop's claim before the CO satisfied the statutory requirements for a claim under the Contract Disputes Act. *Id.* at 1113. We remanded to the Court of Federal Claims with instructions that it review in the first instance the merits of Northrop's breach of contract claim. *Id.*

On remand, the Government moved for summary judgment on grounds that Northrop failed to show damages. The late Judge Francis M. Allegra agreed and found that Northrop "is unable to identify any way that it, as opposed to ESCgov or Citizens, was harmed by defendant's actions." *Northrop Cl.*, 120 Fed. Cl. at 466. The Court of Federal Claims entered summary judgment in favor of the Government and dismissed the complaint on the basis "that defendant has demonstrated that plaintiff is not entitled to any damages under the Delivery Order in question or otherwise." *Id.* Northrop appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

Standard of Review

We review a grant of summary judgment by the Court of Federal Claims de novo, drawing all factual inferences in favor of the nonmovant. *Anderson v. United States*, 344 F.3d 1343, 1349 (Fed. Cir. 2003). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a).

Analysis

Northrop argues that the Court of Federal Claims erred because it was entitled to recover damages despite having assigned its rights under the contract. In the alternative, Northrop urges that the Government should be compelled to make the payments specified under the contract. Northrop believes that the Court of Federal

Claims improperly treats the payments Northrop received under the assignment as a substitute for the payments that the Government agreed to make to it under the Delivery Order. Northrop asserts that the Government should not be allowed to assert the ECSgov and Citizens agreements because it was not in privity to those agreements and the decision results in a windfall to the Government. Northrop argues that the Court of Federal Claims' decision is inconsistent with the statutory scheme and this court's prior decision remanding the case for merits consideration because it deprives Northrop of an opportunity to show breach and recover the payments due under the contract.

It is fundamental in contract law that in order to recover on a breach of contract claim, a plaintiff must prove damages—that it has been harmed. Restatement (Second) of Contracts § 346 (1981) ("The *injured party* has a right to damages for any breach by a party against whom the contract is enforceable unless the claim for damages has been suspended or discharged." (emphasis added)).[2] Damages must be particular to the plaintiff. *Id.* A plaintiff fails to meet this burden upon proof of damages to third parties, but not to its own person. *Severin v. United States*, 99 Ct. Cl. 435, 443 (1943) ("Plaintiffs therefore had the burden of proving, not that someone suffered actual damages from the defendant's breach of contract, but that they, plaintiffs, suffered actual damages.").

---

[2] For the first time at oral argument, Northrop raised the prospect of nominal damages. We decline to remand to determine if nominal damages would be appropriate. Restatement (Second) of Contracts § 346 cmt. b ("Unless a significant right is involved, a court will not reverse and remand a case for a new trial if only nominal damages could result.").

Northrop has not met its burden of establishing damages. The undisputed facts show that Northrop has suffered no harm. This harm can be expectancy damages, measured relative to expected profits; restitution damages, measured relative to a plaintiff's position when the contract was signed; or reliance damages, as a sum of damages sustained as a result of a breach. *Glendale Fed. Bank, FSB v. United States*, 239 F.3d 1374, 1380–82 (Fed. Cir. 2001). Here, for example, Northrop offers no proof that the Government's decision not to exercise the option years caused it harm by placing it in a financially worse position.

To the contrary, the undisputed facts are that Northrop's financial position is equal to what it expected to profit had the Government exercised all the option years. The evidence shows that Northrop received $191,571 in payment, an amount that represented the full extent of its anticipated profit upon assigning the Delivery Order. Northrop offered no proof that it expended resources or incurred any liabilities that cut into its anticipated profit. Northrop is in at least as good, if not better, a position as it expected when it assigned the Delivery Order payments, and it has not shown any particular harm to itself flowing from the alleged breach. *See Glendale Fed. Bank*, 239 F.3d at 1380–82.[3] Northrop had its full self-measure of profit and it stood neither to gain nor to lose whether or not the Government exercised the option years. As the Court of Federal Claims correctly noted, "Northrop reaped the benefit of the bargain it

---

[3] At most, Northrop's potential basis for damages is a pass-through claim on behalf of ESCgov and Citizens. But Northrop denies that it is bringing a pass-through claim. Northrop's Opening Br. 27; Northrop's Reply Br. 5; *see also Northrop Cir.*, 709 F.3d at 1113.

negotiated—it is entitled to nothing more from defendant." *Northrop Cl.*, 120 Fed. Cl. at 466.

We disagree with Northrop that it was improper for the Court of Federal Claims to consider the payment made to Northrop under the ESCgov agreement in determining whether Northrop was harmed. Contract damages take into account both a party's losses and the losses that a party avoided. Restatement (Second) of Contracts § 347 (1981); *see also Severin*, 99 Ct. Cl. at 443. The Court of Federal Claims was correct to take into account Northrop's profits from the assignment of the Delivery Order in determining that it had not been harmed by an alleged breach of that contract.

We also disagree with Northrop that this result is inconsistent with the precedents cited in our *Northrop Cir.* decision. In *Beaconwear Clothing Co. v. United States*, we addressed a pass-through claim brought by a nominal plaintiff on behalf of its subcontractor. 355 F.2d 583 (Ct. Cl. 1966). But unlike this case, the plaintiff requested and received "permission to subcontract the entire contract" to the subcontractor. *Id.* at 585. Northrop, in contrast, both disclaimed pass-through theories of recovery and failed to obtain permission from the Government before assigning the Delivery Order. In *Colonial Navigation Co. v. United States*, a contractor sold a boat to a third party. 149 Ct. Cl. 242, 245 (1960). The boat was subject to a loan from the Government when it was sold, which the Government had agreed to forgive. *Id.* The *Colonial* court held that the contractor could sue to recover based on the Government's breach of a promise to forgive that debt because the contractor showed that it received less in the third-party sale than it otherwise would have, i.e., the contractor proved it was harmed. *Id.* at 247. Northrop, in contrast, has not shown it has suffered any harm.

The judgment of the Court of Federal Claims is affirmed in all respects.

**AFFIRMED**