# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- )<br><br>Avant Assessment, LLC )<br><br>Under Contract Nos. W9124N-10-C-0109 )<br> W9124N-11-C-0015 )<br> W9124N-11-C-0033 ) | ASBCA Nos. 61358, 61407, 61442 |

APPEARANCES FOR THE APPELLANT: Dirk D. Haire, Esq.
                Sean Milani-nia, Esq.
                Rachel M. Severance, Esq.
                Kelsey O'Brien, Esq.
                Alexa Santora, Esq.
                 Fox Rothschild LLP
                 Washington, DC

APPEARANCES FOR THE GOVERNMENT: Raymond M. Saunders, Esq.
                 Army Chief Trial Attorney
                 CPT Harry M. Parent III, JA
                 MAJ Douglas A. Reisinger, JA
                 Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

## FINDINGS OF FACT

These three appeals, concerning three contracts for the development and delivery of foreign-language test items (contracts 15, 33, and 109), were consolidated for hearing and decision. Appellant, Avant Assessment, LLC, seeks compensation pursuant to the contracts' termination-for-convenience clauses, subsequent to our decisions converting the default terminations of those contracts by the U.S. Army Mission Contracting Command (the government) to ones for its convenience. *Avant Assessment, LLC*, ASBCA No. 58903 *et al.*, 17-1 BCA ¶ 36,837 at 179,513 (contract 15); ASBCA No. 58866, 16-1 BCA ¶ 36,511 at 177,886 (contract 33); ASBCA No. 58867, 15-1 BCA ¶ 36,067 at 176,128 (contract 109). The United States Court of Federal Claims transferred to us the termination-for-convenience matter regarding contract 109. *Avant Assessment, LLC v. United States*, 134 Fed. Cl. 323, 336 (2017). We dismissed as moot previous appeals in which Avant advanced breach claims that the government improperly rejected test items. *See Avant Assessment*, 17-1 BCA ¶ 36,837 at 179,513 (contracts 15 and 33); 16-1 BCA ¶ 36,505 at 177,862-63 (contract 109).

Contract 109 was awarded in 2010; contracts 15 and 33 were awarded in 2011 (ASBCA No. 61358 (61358) R4, tab 1 at 1; ASBCA No. 61407 (61407) R4, tab 1 at 1; ASBCA No. 61442 (61442) R4, tab 1 at 2). Contract 15 originally required the delivery of 4,620 test items; contract 33 originally required the delivery of 1,300 test items; contract 109, 3,300 test items. *Avant Assessment,* 17-1 BCA ¶ 36,837 at 179,509-10 (contracts 15 and 33); 16-1 BCA ¶ 36,505 at 177,862 (contract 109). Contract 15 was modified to require only 4,437 test items; contract 33 was modified to require only 1,244 test items; contract 109 was modified to require only 3,174 test items (app. br. at 17-18; *see* tr. 1/11 (reciting a slightly different set of numbers)). The government has paid Avant the contract prices for those modified totals (tr. 1/11).

Contracts 33 and 109 provide that "[i]t is expected that a certain proportion of passages and/or items submitted by the Contractor will be rejected during the [government's] review process"; contract 15 provides that "[i]t is probable that not all submitted items will be accepted" (61358 R4, tab 1 at 11; 61407 R4, tab 1 at 8; 61442 R4, tab 1 at 14). Additionally, the three contracts together reference "historic" rejection rates ranging from 30% to 60% for other such contracts (61358 R4, tab 1 at 14; 61407 R4, tab 1 at 8; 61442 R4, tab 1 at 14).

In addition, contract 15 provides:

> [I]n order to produce 4,620 usable items, the Contractor typically needs to overproduce by 30% or approximately 6,000 items in order to net 4,620 items. The government will only pay for 4,620 usable/approved items.

(61407 R4, tab 1 at 8) Contract 33 provides that "[t]he Contractor shall provide acceptable reading passages and items as summarized in the table below," and that "it is likely that successful completion of the contract will entail the initial development of more items than listed in the above charts, to account for loss during review" (61358 R4, tab 1 at 10-11). Contract 109 similarly provides that the government:

> [W]ill work closely with the Contractor to improve items...but work plans developed by [the government] will entail the initial development of more items than listed in the above charts, to account for loss during review.

(61442 R4, tab 1 at 14)

2

Each contract includes FAR 52.212-4, CONTRACT TERMS AND CONDITIONS— COMMERCIAL ITEMS (JUN 2010), "*Termination for the government's convenience,*" which, in the third sentence of paragraph 1, provides:

> Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination.

(61358 R4, tab 1 at 32; 61407 R4, tab 1 at 32; 61442 R4, tab 1 at 33) The U.S. Army Mission Contracting Command (the government) terminated the contracts for cause in 2013. 17-1 BCA ¶ 36,837 at 179,510 (contracts 15 and 33); 16-1 BCA ¶ 36,505 at 177,862 (contract 109). We converted the terminations of contract 109 in 2015, contract 33 in 2016, and contract 15 in 2017 to ones for the convenience of the government. 17-1 BCA ¶ 36,837 at 179,513 (contract 15); 16-1 BCA ¶ 36,511 at 177,886 (contract 33); 15-1 BCA ¶ 36,067 at 176,128 (contract 109). Familiarity with the facts of these previous decisions is presumed.

In December 2010, after the award of contract 109 but before the award of contracts 15 and 33, the government held a meeting regarding contract 109, notes of which meeting include the following:

> **6. Deliverable ownership:** government maintains full control
> > **a.** The contractor inquired who retains ownership of rejected items
> > **b.** According to the contract, the government retains ownership of all deliverables, which includes rejected items
> > **c.** C.6.12.2 The Government will retain sole ownership of and exclusive rights to all deliverables and Government-Furnished Materials provided to the Contractor (for example, intellectual property).

**Follow Up Action:**
Dean Hays will have Legal review [of] the contract to see if the government does in fact retain ownership of rejected items[.]

(Ex. 11 at 1, 4)

In 2016, Avant presented to the contracting officer its termination settlement proposals for the three contracts (61358 R4, tab 15 at 1; 61407 R4, tab 16 at 1; 61442 R4, tab 14 at 1). In each, Avant requested compensation "for costs incurred for completed items delivered to the Government above the contracted for amount of items," as well as an additional amount for settlement expenses (61358 R4, tab 15 at 2; 61407 R4, tab 16 at 2; 61442 R4, tab 14 at 2). For contract 109 those amounts are $5,185,849.61 and $30,966.25, respectively; for contract 33: $1,514,271.98 and $3,133.00; for contract 15: $2,310,240.87 and $3,405.00 (*id.*). The settlement expenses in the contract 33 and contract 15 proposals appear to be for the time of non-attorney personnel (61358 R4, tab 15 at 58; 61407 R4, tab 16 at 56). Only $10,354 of the settlement expenses in the contract 109 proposal appears to be for such time; the rest appears to be for the time of attorneys (61442 R4, tab 14 at 165-71). None of the termination for convenience settlement proposals alleges that the government asserted a contractual or other ownership right to rejected test items; that the government retained rejected test items inconsistent with Avant's ownership rights; or that the government denied Avant the right or ability to possess, retain, reuse, or repurpose rejected test items (*see* 61358 R4, tab 15 at 1-2; 61407 R4, tab 16 at 1-2; 61442 R4, tab 14 at 1-2).

The contract 15 and contract 33 proposals include Standard Form 1436, which includes certification language that is different from that specified by the Contract Disputes Act (CDA), 41 U.S.C. § 7103(b)(1), for claims exceeding $100,000 (61358 R4, tab 15 at 55; 61407 R4, tab 16 at 52). The contract 109 proposal includes an incomplete Standard Form 1436 that is missing the page with the form's certification language (61442 R4, tab 16 at 156-58). In all three proposals, Avant requested a contracting officer's final decision within 30 days (61358 R4, tab 15 at 1; 61407 R4, tab 16 at 1; 61442 R4, tab 14 at 1). Not having received any such decisions, Avant declared impasses with respect to the contract 15 proposal on November 2, 2016; and on November 17, 2016, with respect to the contract 33 and contract 109 proposals (61358 R4, tab 16; 61407 R4, tab 17). The contract 15 impasse declaration contains a section 7103(b)(1) claim certification (61407 R4, tab 17 at 2). Avant provided section 7103(b)(1) claim certifications for the contract 109 claim on June 14, 2017 (ex. 1), and for the contract 33 claim on August 9, 2018 (Aug. 10, 2018 filing, ex. C).

Avant concedes that it has been paid in full for the number of acceptable foreign-language items required (after modifications) by each of the three contracts

(*see* tr. 1/11). That is, Avant concedes that the government has paid in full for the 3,174 test items required by contract 109; for the 4,437 test items required by contract 15; and for the 1,244 items required by contract 33 (*see id.*; app. br. at 16-17). In addition, at the hearing of these appeals, Avant represented that it is *not* arguing that the government should pay for rejected items that Avant says were acceptable (tr. 1/17-18).

DECISION

*Prong 1: Additional compensation for work performed*

"Prong 1" of the third sentence of FAR 52.212-4(l) provides that "the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination." Avant says that it is entitled under Prong 1 to $9,601,815.22, consisting of contract prices for test items that the government rejected (*see* app. br. at 19). Specifically, because Avant concedes that it has been paid the contracts' prices for the number of test items required by the contracts (tr. 1/11), it appears to be saying that, *not* taking into account those payments, Prong 1 entitles Avant to 164% of the contract 15 price, 225% of the contract 33 price, and 254% of the contract 109 price (*see* app. br. at 6-17). That means that, under Prong 1, Avant seeks an additional 64% of the contract 15 price, an additional 125% of the contract 33 price, and an additional 154% of the contract 109 price for (in the words of its claims), "items delivered to the Government above the contracted for amount of items."

Avant's Prong 1 claims rest upon two, alternative theories. First, contrary to its representation at the hearing, Avant now says that the government has not paid for acceptable test items that it improperly rejected (app. br. at 19-24). Second, Avant says that the government has not paid for rejected test items that Avant delivered but the government "constructively accepted" "through its exclusive ownership and control for the last five years," in denying Avant "the right to possess the 'rejected' items or reuse them in any way," and in retaining all the rejected items instead of returning them to Avant (*id.* at 10, 19-20, 24-29). A valid CDA claim must contain a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim. *Northrop Grumman Computing Systems, Inc. v. United States*, 709 F.3d 1107, 1112 (Fed. Cir. 2013). We possess jurisdiction to entertain none of Avant's Prong 1 claims, because those claims are based upon operative facts that were not already presented in the 2016 claims that are the subject of these appeals. *See GSC Construction, Inc.*, ASBCA No. 59046, 15-1 BCA ¶ 35,882 at 175,429. Those claims assert that the government has not paid for test items delivered "above the contracted for amount of items," but do not further assert facts regarding the improper rejection of acceptable test items or the constructive acceptance of rejected test items through exclusive government ownership and control

and the denial of Avant's rights to possession and reuse. For example, although Avant cites an exhibit containing meeting notes that say "the government retains ownership of all deliverables, which includes rejected items" (app. br. at 5), Avant did not claim to the contracting officer that the government retained ownership of rejected test items. For these reasons, Avant's claims for additional compensation under Prong 1 are dismissed for lack of jurisdiction.

*Prong 2: Reasonable charges resulting from the terminations*

"Prong 2" of the third sentence of FAR 52.212-4(l) provides that the contractor shall be paid "reasonable charges the Contractor can demonstrate...have resulted from the termination." Avant seeks as such Prong 2 "reasonable charges" the same amount that it seeks under Prong 1 (app. br. at 19, 29). However, Avant does not demonstrate that the $9,601,815.22 that it claims (which it explains is "payment for the 'rejected' items at the Contract Line Item rate" (app. br. at 20)) "resulted from the termination," in the words of Prong 2. Avant says that it is entitled to its "reasonable costs for delivering test items in excess of the Contracts'...delivery requirements, plus profit on those costs" (app. br. 19, 30), but, presumably in deference to the clauses in the contracts that contemplate that the government will reject some delivered test items, Avant admits that "the Contracts inherently required Avant [to] *over-perform*," explaining that "[e]ach of the Contracts required Avant...to produce an excess of the stated delivery requirement" (app. reply at 4 (emphasis in original)). Given the posture of these appeals, and to decide Avant's Prong 2 claims only, we do not recognize what Avant calls the cost of "over-performance" as "reasonable charges...[that] have resulted from the termination[s]" within the meaning of Prong 2. Rather (and without deciding any claims that are not properly before us), we see the cost of any such "over-performance" as the cost of full performance of Avant's contract obligations, for which it has been compensated by payment of the contracts' prices, also in full.

To the extent that Avant relies here upon *SWR, Inc.*, and its "fair compensation" discussion, ASBCA No. 56708, 15-1 BCA ¶ 35,832 at 175,223 (*see* app. br. at 17), that very different case offers no help. There, the government terminated the contract before *any* work was performed, *see id.* at 175,225; here, the contracts have been fully performed, and the government has paid the contracts' prices in full. Nor does *TriRAD Technologies, Inc.*, ASBCA No. 58855, 15-1 BCA ¶ 35,898, which Avant cites (app. reply at 7), require a different result; that appeal did not involve a contractor that had earned the contract price. *See id.* at 175,498. Finally, *Caskel Forge, Inc.*, and *Douglas Corp.* (app. reply at 15), offer Avant no help; neither involves the two-pronged clause at issue here or a contractor that earned the contract price. *See Caskel*, ASBCA No. 7638, 1962 BCA ¶ 3318 at 17,104-07; *Douglas*, ASBCA No. 5550, 60-1 BCA ¶ 2531 at 12,113-15.

6

Nevertheless, Avant is entitled to recover under Prong 2 the reasonable expense of preparing and presenting its termination settlement proposals, including reasonable legal expenses. *See Dellew Corp.*, ASBCA No. 58538, 15-1 BCA ¶ 35,975 at 175,783. Avant claims $37,153.25 in such expenses, consisting of $30,966.25 for the contract 109 proposal; $3,054.00 for the contract 15 proposal; and $3,133.00 for the contract 33 proposal (app. br. at 12 n.4). The government says that if we find entitlement for settlement proposal costs, it does not contest Avant's requests for $3,054 for the contract 15 proposal and $3,133 for the contract 33 proposal, and would not contest recovery of settlement expenses in the amount of $10,000 for all three proposals (gov't br. at 26, 29).

We do not find sufficient support for the $30,966.25 in settlement expenses claimed for the contract 109 proposal. The documents that Avant cites (app. br. at 12 n.4 (citing 61358 R4, tab 14, at 165-71)) consist of (1) a table, depicting rates and hours totaling $10,345 for four individuals, that provides no indication of the work those persons performed (*id.* at 165); and (2) an invoice, presumably for the time that attorneys spent on the settlement proposal and other issues, that segregates but does not sum the 19 separate amounts that Avant presumably seeks for work on that proposal, ostensibly leaving that calculation to the Board (*id.* at 166-71). Under these circumstances, and considering that the amount requested for the contract 109 proposal is on the order of *ten times* the amount requested for each of the other proposals despite the similarity of all three, we award the amounts that the government represents it would not contest and we determine to be reasonable and supported by the record: $3,133 for the contract 33 settlement proposal; $3,054 for the contract 15 proposal; and, for the contract 109 settlement proposal, $3,813 (the difference between the sum of the first two amounts and the $10,000 that the government says it would accept for all three proposals). *Cf. ESCgov, Inc.*, ASBCA No. 58852, 17-1 BCA ¶ 36,772 at 179,188-80 (accepting government's alternative, $5,489 itemization of $15,651 in legal fees claimed for preparation of termination settlement proposal, including because contractor made a mostly conclusory effort to contest government's position).

*Interest*

Finally, Avant is entitled to interest with respect to the contract 15 proposal from November 2, 2016; and with respect to the contract 33 proposal from November 17, 2016; the dates that the parties reached impasses with respect to those proposals (and whose original certifications were ultimately perfected), until payment. *Rex Systems, Inc.*, ASBCA No. 52247, 00-1 BCA ¶ 30,671 at 151,491; *see also Magnus Pacific Corp. v. United States*, 133 Fed. Cl. 640, 705 (2017) (citing 41 U.S.C. § 7109(a)(2)). With respect to the contract 109 proposal, Avant is entitled to interest from June 14, 2017, when it certified its claim (having not done so earlier), until payment. *Magnus Pacific*, 133 Fed. Cl. at 705.

7

## CONCLUSION

Avant's constructive acceptance claims and improper rejection claims are dismissed for lack of jurisdiction. The appeals are sustained in the following amounts, with interest under 41 U.S.C. § 7109, from the following dates, until payment: ASBCA No. 61358 (regarding contract 33): $3,133, from November 17, 2016; ASBCA No. 61407 (regarding contract 15): $3,054, from November 2, 2016; and ASBCA No. 61442 (regarding contract 109): $3,813, from June 14, 2017.

Dated: October 3, 2018

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 61358, 61407, 61442, Appeals of Avant Assessment, LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

8